## The Welch Grape Juice Co. v. Frankford Grocery Co.

*Robert J. Sterrett,* for plaintiff.

*O. Rodger Melling* and *James R. Wilson,* for defendant.

ALESSANDRONI, J., September 7, 1939.—This bill in equity was filed to restrain an alleged violation of section 2 of the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266, 73 PS §§7 and 8. Plaintiff, the Welch Grape Juice Company, is a New York corporation with its principal place of business at Westfield, N. Y., and is duly registered and authorized to engage in business in the Commonwealth of Pennsylvania. Plaintiff corporation is a producer engaged in the business of making, packing, selling, and distributing various food products including grape juice, tomato juice, and grapelade. Defendant, the Frankford Grocery Company, is a corporation organized under the laws of the Commonwealth of Pennsylvania. The bill avers that all of plaintiff's products bear a distinctive trade-mark which is owned by plaintiff and are in fair and open competition with commodities of the same general class produced by others; that the products are distributed nationally to various wholesalers and jobbers but not to retailers; that defendant is a wholesale jobber who is in the business of purchasing various food products including those of plaintiff and selling them to retail grocers; that defendant sells solely to retail grocers who are stockholders of defendant corporation and who are members of the Frankford Grocers Association; that on February 8, 1939, plaintiff entered into a contract with two of its wholesalers and jobbers for the sale of its products, which contracts, pursuant to the Fair Trade Act, supra, contain a minimum resale price list for wholesalers and jobbers of plaintiff's products; that plaintiff by registered mail notified its wholesalers and jobbers in Pennsylvania of the execution of these contracts and attached thereto a minimum resale price list for wholesalers of plaintiff's products, one of which notices was received by defendant; that defendant has continuously from the date of such notice wilfully and knowingly advertised and offered for sale and has sold the products of plaintiff corporation at less than the minimum resale price stipu-

lated in the contracts and notices; that such conduct on the part of defendant constitutes unfair competition and has resulted and will continue to result in irreparable loss and damage to plaintiff. Plaintiff, therefore, asks this court to enjoin defendant from advertising, offering for sale, or selling the products of plaintiff below the minimum resale price for wholesalers.

The answer of defendant denies that it is a wholesaler or jobber in the business of purchasing various food products, including those of plaintiff, and selling them to retail grocers. It is averred that defendant is a cooperative purchasing and marketing organization of retail grocers and is solely owned and controlled, except for a few shares owned by its officers and employes, by retail grocers in Philadelphia and the vicinity who are its sole distributees, and that defendant purchases plaintiff's products as agent for its member stockholders; that no person other than a retail grocer can become a stockholder of defendant corporation nor can any of its merchandise be secured by any party or persons not a stockholder. Defendant further averred that plaintiff did sell its merchandise to retailers and also to chain stores and "super markets"; that plaintiff violates the Robinson-Patman Act of June 19, 1936, 49 Stat. at L. 1526; and finally, that the Fair Trade Act of June 5, 1935, P. L. 266, is unconstitutional.

Upon a consideration of the pleadings, the admissions contained therein, and the testimony offered in support thereof, the court makes the following

### Findings of fact

1. Plaintiff is the Welch Grape Juice Company, a corporation duly organized under the laws of the State of New York, having its principal place of business at Westfield, N. Y., and duly registered and authorized to engage in business in the Commonwealth of Pennsylvania.

2. Defendant is the Frankford Grocery Company, incorporated under the laws of the Commonwealth of Pennsylvania.

3. Plaintiff is a producer engaged in the business of making, selling, packing, and distributing various food products including grape juice, tomato juice, and grapelade.

4. Each of the said products of plaintiff bears a distinctive trade-mark which is owned by plaintiff in the name of plaintiff. The trade-mark "Welch's" which appears on each label is registered with the United States Patent Office, registration number 109,970; the Welch Grape Juice label bears registration number 125,112; the Welch Tomato Juice label bears the registration number 342,584; and the Welch Grapelade label bears registration number 124,353.

5. The said products produced by plaintiff are in fair and open competition with commodities of the same general class produced by others.

6. Plaintiff sells its trade-marked commodities and ships the same in interstate commerce to various wholesalers and jobbers, as well as various retail dealers.

7. On February 8, 1939, plaintiff entered into a contract with two of its wholesalers in the City of Philadelphia, namely, Solomon Perloff & Son, 8 South Front Street, and Pearl & Lax, 472 York Avenue. These contracts were executed pursuant to the terms of the Act of June 5, 1935, P. L. 266, known as the Fair Trade Act, and contain a minimum resale price list for wholesalers and jobbers of plaintiff's products.

8. From February 8th to February 16, 1939, plaintiff by registered mail notified 194 of its wholesalers and jobbers in Pennsylvania of the execution of the said contracts and enclosed therein a copy of the minimum resale price list for wholesalers and jobbers of its products.

9. Defendant corporation received one of the said notices.

10. Defendant is a coöperative purchasing and marketing association of retail grocers whose "sole aim and object . . . is to help the retail grocers who are members of the Frankford Grocers Association, by eliminating as far as possible, the expense of the transfer of merchandise from the producer to the retailer."

11. The stock of defendant corporation is owned by individual retail grocers except for a small percentage thereof owned by its officers and employes.

12. In 1892 certain retail grocers formed the Frankford Grocers Association under the management of James A. Edgar, now president of defendant corporation, for the purpose of purchasing merchandise from the manufacturers and producers and distributing the same among themselves.

13. The organization was incorporated under the name Frankford Retail Grocers Association in 1905, which name was changed in 1909 to the Frankford Grocery Company.

14. Only retail grocers are eligible to become members of defendant corporation, except for employes and officers of the company.

15. A retail member stockholder subscribes to an amount of stock equal to his average weekly withdrawal of merchandise and immediately assigns his stock to defendant as security for the same.

16. If a stockholder ceases to engage in the retail grocery business he must surrender his stock in defendant corporation.

17. Defendant purchases merchandise from manufacturers and producers at wholesale rates and in wholesale quantities and distributes the same only to its member stockholders.

18. The amount charged for withdrawals of merchandise to the member stockholders is ascertained by estimating the cost of distribution and fixed overhead charges including an adequate reserve. The said charge approxi-

mates the cost incurred by defendant corporation and is so fixed as to preclude as far as possible any resultant profit.

19. Prior to incorporation members of this coöperative association lent money to the organization and received five percent annually for its use. Stockholders now receive five percent of the par value of their stock.

20. Any surplus which accrues in the operation is returned to the members in the form of merchandise credits in proportion to the amount of withdrawals made by each.

21. Defendant furnishes extensive services to its members either free or at cost or at less than cost, which services include distribution of a special edition of the Modern Merchant and Grocery World, a trade journal which contains an appendix for the exclusive use of the members of defendant association; advice on retail marketing, uniform signs, and furnishings for the retail stores; advice to members on modern business methods, insurance problems, accounting service, legal problems, and household credit service; advertising in newspapers of general circulation.

22. The corporation is controlled by a board of directors which directs and defines the policies of the association and which is composed of seven retail grocers, who are members of the association, and two of its officers.

23. Defendant is a retail-owned coöperative association and not a wholesaler or jobber.

24. Defendant is not engaged in the purchase of merchandise for resale but confines its distribution solely to its member stockholders who are retail grocers.

25. The retail grocers who are members of defendant association comply with the consumers price list fixed by plaintiff which governs the minimum price at which retail grocers may sell to the consumer.

26. The evidence fails to establish that any decrease in the sale of plaintiff's products in this area was the result of defendant's refusal to comply with the minimum wholesale price schedule fixed by plaintiff in the distribution by defendant of plaintiff's products to its members.

## Discussion

The fair trade acts which have been adopted by 43 States within the last few years have been the subject of extensive discussion both in legal decisions and economic treatises: See Old Dearborn Distributing Co. v. Seagram Distillers Corp., 299 U. S. 183, Bristol-Myers Co. v. Lit Brothers, Inc., 336 Pa. 81, Fair Trade Acts by Professor McLaughlin, 86 U. of P. Law Rev. 803, and Zorn & Feldman on Business Under the New Price Laws.

Mr. Justice Maxey, in the recent case of Bristol-Myers Co. v. Lit Brothers, Inc., supra, stated (p. 85) :

"The purpose of the Fair Trade Act is obvious, it being to prevent the cutting by any dealer, of the established price of any commodity identified by the trade-mark, brand or name of the producer. This price cutting which confers a slight pecuniary advantage to the buyer has nevertheless been adjudged by the lawmakers of forty states to be prejudicial to the public interest. Such price cutting forces, or at least prompts, other dealers to abandon the sale of the price-cut commodity, with the result that the producer of it suffers a loss of business which in turn leads to unemployment in his establishment. The abandonment of the sale of this price-cut commodity by many dealers means the narrowing to the public of opportunities to purchase it and if it is an article of merit, as it presumably is, the public interest is thereby affected adversely. Our state legislature by the enactment of the law now invoked has declared that it is the public policy of this Commonwealth to stop this 'cut-throat competition'. Price cutting through 'loss leaders', that is, by selling a certain commodity at less than cost in order to attract trade to the store where many other commodities, as well as the 'loss leader' commodity, are sold, has come to be generally looked upon as unfair and predatory, and the prevention of such practices was the undoubted purpose of the Pennsylvania Fair Trade Act of 1935."

The Pennsylvania Fair Trade Act, which was approved June 5, 1935, is a duplicate of those acts passed by other

States prior to 1937. The second section of that act under which section relief is sought in the present case provides:

"Section 2. Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

This section is in derogation of the common law. Proceedings to restrain a purchaser of trade-marked goods from reselling them at a price less than that fixed by the owner of the trade-mark and others, with knowledge of the terms of the contract, could not successfully have been maintained in Pennsylvania prior to the passage of the above act. See Garst v. Wissler, 21 Pa. Superior Ct. 532 (1902).

"The Statutory Construction Act of May 28, 1937, P. L. 1019, which prescribes rules for the interpretation of Pennsylvania statutes, expressly provides that all statutes enacted prior to its effective date, in derogation of the common law, shall be strictly construed. See clause 8 of section 58. Therefore, according to the rules of construction laid down by the State legislature in 1937, the Fair Trade Act of 1935 must be construed strictly": Bristol-Myers Co. v. Lit Brothers, Inc. (No. 1), 33 D. & C. 52, 66.

The primary issue in the present case is whether defendant is properly considered a wholesaler or jobber and is consequently subject to the minimum resale price list for wholesalers prescribed by plaintiff producer. Defendant contends that it is not a wholesaler and that only its constituent members who are retail grocers are subject to the provisions of the act and must conform to the consumers' minimum price schedule prescribed by plaintiff. Defendant corporation is clearly a coöperative pur-

chasing and marketing association of retail grocers. In 1892, independent grocers in the vicinity of Frankford organized for the purpose of eliminating the middleman's or wholesaler's profit by coöperative buying and distribution. This resulted in the formation of a corporation known as the Frankford Retail Grocers Association, which in 1909 became known as the Frankford Grocery Company. The function of this organization is to purchase groceries in wholesale quantities and obtain the resultant discounts. Each retail grocer subscribes to an amount of stock which will equal his average weekly withdrawal of merchandise and then assigns the stock to defendant as collateral security for the value of the merchandise to be withdrawn. Only stockholders of defendant corporation are permitted to obtain merchandise from defendant, and only retail grocers may become stockholders, except for employes or officers of the company. When a retail grocer ceases to be engaged in that business he must tender his stock to the corporation and the purchase price is returned. The price at which a given commodity is distributed to the retail grocers of the association approximates the actual cost thereof. The discount which the association secures by large purchases is applied to the overhead costs of carrying on the enterprise. In the event that any surplus might accrue it is returned to the members in proportion to the amount and value of withdrawals made from defendant association in the form of merchandise credits. The corporation is controlled by a board of directors of whom seven are retail grocers and two are officers of the association. Defendant corporation is one of the outstanding examples of coöperative associations which are successfully operated in this country. Both in theory and practice the operation of the coöperative for the purpose of profit and as an entity separate and apart from its constituent members is a contradiction. This company, whose total business for the year 1938 approximated $11,000,000, showed an

operating profit of $70,000 which is as near as is humanly possible to operating at cost.

The members of the association are provided with a special edition of the Modern Merchant and Grocery World, a trade journal which contains an appendix with a cost list of defendant's purchases for its stockholder members. Distribution or withdrawals are made by written requests forwarded to the association by the retail members in accordance with the schedule set forth in the journal. The information contained in this appendix is the property of the coöperative and its members and a penalty is imposed on anyone disclosing its contents. No one but constituent members is permitted to withdraw merchandise from the association at any time.

Plaintiff contends that the withdrawals of merchandise by the members of defendant association are sales within the meaning of the Act of 1935, and that defendant is not a coöperative association but is properly classified as a wholesaler. In support thereof plaintiff has shown that defendant is not incorporated as a nonprofit corporation and that its corporate purpose is the purchase and sale at wholesale of groceries. Emphasis is made of the fact that the president of defendant corporation described it "as the largest and best retail owned wholesale grocery company in the United States", that withdrawal transactions have been referred to as "sales", that defendant corporation and not the constituent retail member is the vendee of the merchandise, and that title to the merchandise purchased vests in defendant corporation and is then transferred to the retail members.

To adopt the contention of defendant is to grasp at the form while the substance escapes. These technical characteristics do not portray the real character of the operation of the coöperative association. The character of the transaction is not changed because the individuals have seen fit for their own convenience to organize themselves into a corporation which in reality, although per-

haps not in form, is a purchasing and distributing agent. The purchases are not made for the purpose of resale to a jobber or a retailer, as in the case of a wholesaler, but are purchases made by a group of retailers acting in concert for resale to ultimate consumers. It is the nature of the resale which distinguishes a wholesaler from a retailer.

The determination of this question does not depend upon the decisions in the cases of Klein v. Livingston Club, 177 Pa. 224, and Union League v. Ransley, 39 Pa. Superior Ct. 514, cited by defendant, nor the decisions in the cases of Benner et al. v. Tacony Athletic Assn. et al., 328 Pa. 577, or Blauner's, Inc., et al., v. Philadelphia et al., 330 Pa. 340, cited by plaintiff. The construction of the term "sale" in those cases depended upon the statute in which they were contained, or, as in the case of Benner et al. v. Tacony Athletic Assn. et al., supra, the deed which was being construed. In the latter case a sale was defined in its legal sense as a transfer or agreement to transfer title to property for a consideration, because the deed in which the prohibition was contained required the ordinary legal definition, since the subject of restriction was the transaction. It is evident that a term must be interpreted in connection with the enactment in which it is contained and the economic character of the legislation now in issue requires that "sale" be construed in a commercial rather than a technical sense. The decisions in the cases of Beaver County Coöperative Association's Appeal, 118 Pa. Superior Ct. 305, and Commonwealth v. Thorne, Neal & Co., Inc., 70 Pa. Superior Ct. 599, are inapplicable, since the mercantile tax which was involved in those cases is a tax on the privilege of doing business and not a tax on sales.

In the case of Mennen Co. v. Federal Trade Comm., 288 Fed. 774, certiorari denied, 262 U. S. 759, 43. S. Ct. 705, 65 L. Ed. 1219, a cease and desist order was issued by the Federal Trade Commission under the Act of September 26, 1914, 38 Stat. at L. 717, 724, and the Clayton

Anti-Trust Act of October 15, 1914, 38 Stat. at L. 730, to restrain a manufacturer from discriminating between wholesalers and retailers as unfair competition within the meaning of those acts. The propriety of classifying a mutual or coöperative purchasing and distributing corporation as a retailer was one of the issues. The circuit court of appeals, in an opinion by Mr. Justice Rogers, stated at pages 781, 782:

"In conclusion it ought perhaps to be said that we have not been unmindful of the fact that the Mennen Company in classifying purchasers into two groups, those of wholesalers and retailers, placed in the group of retailers a class of mutual or coöperative corporations which purchased in large quantities the Mennen products. These mutual or coöperative corporations, it is admitted, consist solely of the retailers in the same line of trade; the stock being held exclusively by retailers. The fact that these individuals, admitted by the counsel for the Federal Trade Commission to be retailers, see fit for their own convenience to organize themselves into a corporation which they constitute their agent for purchasing purposes, does not change their character, or the character of their purchases, and convert them into wholesalers.

"Whether a buyer is a wholesaler or not does not depend upon the quantity he buys. It is not the character of his buying, but the character of his selling, which marks him as a wholesaler, as this court pointed out in Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., supra. A wholesaler does not sell to the ultimate consumer, but to a 'jobber' or to a 'retailer.' The persons who constitute these mutual or coöperative concerns are buying for themselves to sell to ultimate consumers, and not to other 'jobbers' or to other 'retailers.' The nature of the transaction herein involved is not altered by the fact that they make their purchases through the agency of their corporation. For some purposes a corporation is distinct from the members who compose it. But that

distinction is a fiction of the law, and the courts disregard the fiction whenever the fiction is urged to an intent and purpose which is not within its reason and policy. And in such case as this the fiction cannot be invoked. The important fact is that the members of the corporation are all retailers who buy for themselves to sell to the ultimate consumer. The Mennen Company is within its rights in classifying them as retailers."

Judicial recognition has, therefore, been given to the true character of a coöperative, the nature of its operation, and the economic function that it performs. An examination of the facts in the instant case in connection with the Fair Trade Act and its recognized purpose discloses that in spite of the form and terminology there is no sale within the meaning of the act by defendant association to its constituent members and, therefore, no violation of section 2. The admitted compliance by the retail members of the association with the consumer's price schedule prescribed by plaintiff for the sale of its products to the public precludes the possibility that the association and its members are attempting to violate the spirit of the act by any subterfuge.

An attack upon the constitutionality of the Fair Trade Act is made by defendant. The legality of the substance of the act has been determined by the decision in the case of Old Dearborn Distributing Co. v. Seagram-Distillers Corp., supra. Defendant contends, however, that the title of the act violates article III, sec. 3, of the Constitution of the Commonwealth of Pennsylvania, which provides that no bill except general appropriation bills shall be passed containing more than one subject, which shall be clearly expressed in its title.

This section requires that a title to an act need only be sufficient to put anyone having an interest in the subject matter on inquiry. It need not embody all the distinct provisions of the bill in detail nor serve as a digest of its contents: Knowles' Estate, 295 Pa. 571. Defendant complains that the term "uneconomic practices" used

in the title cannot possibly include unfair competition, defined in section 2 of the act, and that no notice is given by the title of the act that voluntary contracts establishing minimum resale prices are to be hereafter permitted. It is only the purpose of the act and not the means by which that purpose is to be accomplished that must be contained in its title. Section 3 of article III "was not intended to exercise a pedantic tyranny over the grammatical efforts of legislators, nor to place them between the horns of a constructional dilemma, namely, that the title of an act must be so general or so particularized as to include all of its subject-matter, and yet not so general as to give no indication of its purpose, nor so particular as to inferentially exclude from its scope any items inadvertently omitted": Commonwealth v. Stofchek, 322 Pa. 513, 517. The purpose of the provision was to exclude from the measure that which is secret and unrelated. The title to the Act of June 5, 1935, P. L. 266, indicates the intention of the legislature clearly and without ambiguity.

Defendant also contends that plaintiff violates the Robinson-Patman Act of 1936, supra, chap. 592, which provides that it shall be unlawful either directly or indirectly to discriminate in price between different purchasers of commodities of like grade and quality where the effect of such discrimination may be substantially to lessen competition. Plaintiff sells to all persons at the same price but defendant contends that, as a term of each purchase contract, it annexes a resale price provision under the Fair Trade Act which is different for a wholesaler or retailer. This results, defendant contends, in an unfair discrimination in favor of chain stores who purchase plaintiff's commodities at the same price as wholesalers but are permitted to resell according to the consumer's price schedule, whereas the wholesalers must resell at the wholesale price schedule. Although the price at which the individual retailer may purchase plaintiff's products from a wholesaler is, therefore, different from

the price at which a chain store purchases the same products from plaintiff, we do not believe that the Robinson-Patman Act has been violated. It must be remembered that any retailer may purchase directly from plaintiff at the same price as the chain store. It is also evident that the term "price" contained in the Robinson-Patman Act refers to the consideration paid to the producer by his immediate vendee. Furthermore, the Robinson-Patman Act was followed by an act of the succeeding Congress known as the Miller-Tydings Act of August 17, 1937, 50 Stat. at L. 693, chap. 690, 15 U. S. C. §1, which excepts fair trade acts from the operation of the Sherman Anti-Trust Act of July 2, 1890, 26 Stat. at L. 209, and which is a recognition by Congress of the desirability of such enactments. It is evident that Congress did not contemplate a construction of the Robinson-Patman Act which would create an irreconcilable conflict between it and its contemporary enactment and defeat the primary objective of the fair trade laws.

For the foregoing reasons this court is of the opinion that the Fair Trade Act of 1935 is constitutional but that the transactions between defendant coöperative association and its constituent members are not within the scope of the enactment. . . .

### Conclusions of law

1. The Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266, is in derogation of the common law and must be strictly construed.

2. The Fair Trade Act of 1935 is constitutional.

3. The said enactment does not apply to distribution of merchandise by defendant coöperative association to its constituent members.

4. This bill in equity should be dismissed at cost of plaintiff.

### Decree nisi

And now, to wit, September 7, 1939, it is ordered, adjudged, and decreed that the bill of complaint is hereby

dismissed and the costs of these proceedings shall be paid by plaintiff; the prothonotary is directed to enter this decree nisi and to give notice thereof to parties and counsel and unless exceptions are filed within 30 days thereafter, either party may present a form for final decree to be entered in this case.