Shearer's Dairies, Inc., Appellant, *v*. Pennsylvania Milk Control Commission.

Argued December 15, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Walter Biddle Saul*, with him *Gerald K. Burns*, *M. J. S. Stoney*, and *Saul, Ewing, Remick & Saul*, for appellant.

*John Patrick McShea, Jr.*, Assistant Attorney General, with him *Marvin D. Weintraub*, Assistant Attorney General, and *Anne X. Alpern*, Attorney General, for Milk Control Commission, appellee.

OPINION BY WOODSIDE, J., March 24, 1960:

This is an appeal from the order of the Court of Common Pleas No. 6 of Philadelphia affirming an order of the Milk Control Commission which suspended the appellant's milk dealer's license for violation of section 807 of the Milk Control Law of April 28, 1937, P. L. 417, as amended, 31 PS §700j-807.

This section provides inter alia: "After the commission shall have fixed prices to be charged or paid for milk, . . . it shall be unlawful for a milk dealer . . . knowingly or unknowingly, or any other person knowingly, by himself or through another, to sell or deliver,

or make available on consignment or otherwise, . . . milk at any price below the minimum price or above the maximum price applicable to the particular transaction. . .

"No method or device shall be lawful whereby milk is . . . sold or handled or delivered or made available on consignment or otherwise . . . at a price less than the minimum price applicable to the particular transaction, whether by any discount, premium, rebate, free service, trading stamps, advertising allowance, or extension of credit, or by a combined price for such milk, together with another commodity or a service which is less . . . than the aggregate of the price of the milk and the price or value of such commodity or service . . ."

In dealing with a violation of this section, we recently reviewed the purpose and development of milk control in Pennsylvania. We said, "The purpose of the Milk Control Law, as stated in its preamble, is to assure consumers a constant and sufficient supply of pure, wholesome milk, primarily through price regulation and control." We pointed out that although governmental price fixing and its concomitants may run counter to the philosophy of free enterprise, it has been firmly established in relation to milk for over a quarter of a century; that milk control is founded upon price control; and that to maintain an established price, it is necessary to prevent the seller from giving to the purchaser any thing of value related to the sale, which is in addition to the product and service for which the price was established. *Milk Maid Dairy Products, Inc. v. Pa. Milk Control Commission,* 190 Pa. Superior Ct. 410, 413-415, 154 A. 2d 274 (1959).

Shearer's Dairies, Inc., hereafter referred to as Shearer, is a licensed milk dealer. It was cited by the Milk Control Commission for violating section 807, supra, of the Milk Control Law in a number of different respects. Because these various alleged violations con-

stituted separate transactions, the commission made separate findings and imposed separate penalties. Shearer appealed from the commission's findings and imposition of penalties on two of the violations. The court below sustained the commission in both cases. Shearer appealed only one to this Court, an order imposing a suspension of 30 days or a penalty of $1500.

Basically, what the appellant did here was this: it sold milk to certain merchants at the minimum price established by the commission for such sales, and then paid 10% of the established price to a corporation owned by those merchants. No matter how far we follow the maze of corporative activities and involved contractual relationships, it will bring us back to this procedure, which, in our opinion, constitutes a device to sell milk at a price less than the minimum established by the commission, and is in violation of section 807, supra, of the Milk Control Law. Neither the ingenuity of the contract, nor the intricacies of the corporate structure change this transaction into anything but such a device. This was the finding of the commission which was affirmed by the court below. As stated by that court "the administrative determinations based upon experience in the field should not be lightly disregarded."

The corporation owned by the merchants is Frankford Grocery Company, which is a cooperative purchasing and marketing association organized to purchase goods in large quantities and thereby eliminate the wholesaler's profit. By this method the merchants, who own Frankford's stock, can compete with chain stores. The history, corporate structure and method of operation of this corporation are set forth in detail in *Philadelphia School District v. Frankford Grocery Co.,* 376 Pa. 542, 103 A. 2d 738 (1954); *Welch Grape Juice Co. v. Frankford Grocery Co.,* 36 Pa. D. & C. 653 (1939); and by the court below in this case, 20 Pa.

D. & C. 2d 365 (1959). It will serve no purpose to again detail them.

In brief, Frankford was organized some years ago under the business corporation laws of Pennsylvania to act as a cooperative enterprise of retail grocers. It performs some non-cooperative functions, apparently not within the corporate purpose. Except for a few shares of stock held by officers and employes of the corporation, all of its stock is owned by merchants in proportion to the amount of merchandise purchased by them from the corporation. The excess of receipts over total cost is distributed yearly by Frankford to its stockholders in proportion to the goods each purchased from the corporation. When a merchant withdraws from the cooperative, he must sell his stock to Frankford at a fixed price. Frankford established and promotes "Unity" as a brand name.

Frankford desired to get into the milk business without being subject to price regulation.[1] Shearer, the appellant, desired to increase its sale of milk. To fulfill these desires, the two corporations entered into the agreement which the Milk Control Commission and the court below found violated section 807, supra, of the Milk Control Law. The contract related only to milk, cream, chocolate milk, and buttermilk—all products subject to price control under the Milk Control Law. The contract differed materially from one entered into the same day between the same parties relating to ice cream, which is not subject to price control. Ordinarily, merchandise is bought by Frankford and resold to its merchant-stockholders at as near cost as possible.

---

[1] The appellant's brief says: "Evidence introduced at the Hearing before the Milk Control Commission revealed the following facts: . . . (3) Frankford entered into the questioned contract with Shearer's for three purposes: a It desired to get into the milk business . . ."

Under the contract, Frankford listed in its bulletins the price controlled milk products, along with ice cream and the other products it sold to its members. Orders received by it from its stockholder-merchants for the price controlled products were referred to Shearer who delivered the milk products directly to the merchants, and kept individual accounts for each merchant. The bills for the merchandise were made in the name of the customers at the minimum price set by the Milk Control Commission and were sent weekly to Frankford who paid them. Shearer then paid back to Frankford monthly 10% of the price of the milk products sold to the merchants who were Frankford's stockholders. The milk was sold under the name of "Unity", and Shearer had exclusive use of this brand name for the sale of milk to Frankford's stockholders during the life of the contract. Frankford employed no salesmen.

Shearer contends that the agreement with Frankford is a service contract through which it is paying a fee to Frankford for soliciting sales, investigating credit ratings, collecting bills, servicing accounts, advertising, and permitting use of its brand name.

The court below, in an opinion by Judge FLOOD, analyzed these contentions in detail and demonstrated that the same service was rendered in the ice cream contract and in the purchase and resale of other products with little or no charge. See 20 Pa. D. & C. 2d 365 (1959), supra.

Frankford has set up a separate account for the milk contract and assigns the profit made under the contract to surplus instead of distributing it to the merchant-stockholders. This does not change the fact that the profit enhances the value of the corporate stock owned by the merchants who buy the milk products from Shearer. It is not important whether these

funds be used by Frankford to increase the service rendered to the merchant-stockholders, or to reduce the overhead cost of operating the corporation, or to increase its working capital, or to increase the annual distribution to the merchants. Nor is it necessary for the commission to establish the profit of Frankford involved in the transaction or the particular use made of the nearly $40,000 a year income received by it from Shearer. When these merchant-stockholders buy milk, 10% of the fixed price is paid back to a corporation owned by them and operated by them solely for their benefit.

It is evident from examining section 807, supra, of the Milk Control Law, that the legislature took unusual care to make it clear that all methods to circumvent the minimum price fixed for the sale of milk and regulated milk products are illegal. An examination of the court decisions and administrative orders made under the Milk Control Law will reveal that, although the vast majority of milk dealers seem to comply with both the spirit and letter of the law, nevertheless, numerous methods have been devised by various dealers in an effort to furnish customers things of value which have the effect of selling milk products at less than the established minimum price. Here the device used to return a part of the purchase price to the merchants resulted in sales of approximately $400,000 per year by appellant, undoubtedly business taken from other dealers who were charging the minimum price established by the commission.

It seems clear to us, as it did to the commission and to the court below, that the contract between Shearer and Frankford is a device to circumvent the price established by the Milk Control Commission and that it is in violation of section 807, supra, of the Milk Control Law.

Order affirmed.