Milk Control Commission, Appellant, *v.* Rieck
Dairy Division of National Dairy
Products Corporation.

Argued April 13, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*Marvin D. Weintraub*, Assistant Attorney General, with him *John Patrick McShea, Jr.*, Assistant Attorney General, and *Anne X. Alpern*, Attorney General, for Milk Control Commission, appellant.

*Samuel A. Schreckengaust, Jr.*, with him *Donald R. Waisel, William Eckert*, and *McNees, Wallace & Nurick*, for milk dealer, appellee.

*Frank E. Coho,* with him *Robert G. MacAlister, Stanley M. Simon,* and *Johnston & Coho,* on behalf of appellee, under Rule 46.

OPINION BY WOODSIDE, J., September 16, 1960:

This appeal is from an order of the Court of Common Pleas of Allegheny County reversing an order of the Milk Control Commission which suspended the appellee's milk dealer's license for violation of section 807 of the Milk Control Law of April 28, 1937, P. L. 417, as amended, 31 P.S. §700j-807.

This section provides, inter alia: "After the commission shall have fixed prices to be charged or paid for milk, . . . it shall be unlawful for a milk dealer . . . *knowingly or unknowingly,* or any other person knowingly, by himself or through another, to sell or deliver, or make available on consignment or otherwise, . . . milk at any price below the minimum price or above the maximum price applicable to the particular transaction.

"No method or device shall be lawful whereby milk is . . . sold or handled or delivered or made available on consignment or otherwise, . . . at a price less than the minimum price applicable to the particular transaction, whether by any discount, premium, rebate, free service, trading stamps, *advertising allowance,* or extension of credit, . . ." (Emphasis supplied).

In the recent cases of *Shearer's Dairies, Inc. v. Pennsylvania Milk Control Commission,* 191 Pa. Superior Ct. 574, 576, 159 A. 2d 268 (1960) and *Milk Maid Dairy Products, Inc. v. Pennsylvania Milk Control Commission,* 190 Pa. Superior Ct. 410, 413, 414, 154 A. 2d 274 (1959), we pointed out that the purpose of the Milk Control Law, as stated in its preamble, is to assure consumers a constant and sufficient supply of

pure, wholesome milk, primarily through price regulation and control. We noted that although governmental price fixing and its concomitants may run counter to the philosophy of free enterprise, it has been firmly established in relation to milk for over a quarter of a century; that milk control is founded upon price control; and that to maintain an established price, it is necessary to prevent the seller from giving to the purchaser any thing of value related to the sale, which is in addition to the product and service for which the price was established.

In the case now before us, the Milk Control Commission, after due notice and hearing, found that Rieck Dairy Division of National Dairy Products Corporation, licensed by the commission as a milk dealer, gave an advertising allowance to five of its wholesale customers who used shopping carts. The milk dealer installed and maintained signs on the carts advertising its Sealtest milk and dairy products. For these signs, the favored five customers were paid 60¢ per month per cart by the milk dealer.

The signs were placed on 200 carts of the Super Value Market on December 1, 1955; on 875 carts of the Century Food Stores on April 1, 1956; on 305 carts of the Joseph's Super Market in the fall of 1956; on 100 carts of the A. & M. Market on September 1, 1956; and on 2371 carts of Loblaw Supermarkets in December of 1956. The milk dealer paid these five customers by check each month, a total of $2310.60.

These payments by the dealer to its customers were advertising allowances. The customers recognized the payments as such, and the court below found them to be such.

"Advertising allowance" may not be a well defined term in the law, but its nature and purpose is well understood in the business world.

Morton J. Simon, Esquire, at page 413 of his treatise "The Law for Advertising and Marketing," 1956, states: "Since advertising is today a part of the cost of merchandise and of doing business, any allowance or payment for advertising is actually a rebate or reduction in that cost. Accordingly, the misuse of a manufacturer's co-operative-advertising system will result in price discrimination among its customers as much as any other variation in the actual price or cost itself.

"This has been the history of the advertising allowance. Its development has paralleled, and has been to some extent a part of the continuing economic differences between the large and the small business. As large purchasers were able to make their buying power felt, they made demands upon their sources. Various kinds of out-and-out discounts and rebates were given: quantity, cash, trade, functional, warehousing, and brokerage. Then the manufacturers and the large buyers turned to the advertising allowance as a further device for the preferential treatment of the large purchaser."

See also "Marketing Handbook" by Reevis Cox, Professor of Marketing, University of Pennsylvania, page 579; "Advertising and Promotional Allowances" by Messrs. Feldman and Zorn, pages 70 and 71.

Although the court below found the payments made by the dealer to his customers were advertising allowances, it concluded that they did not constitute a method or device to sell milk at a price less than the minimum established by law, and, therefore, they were not prohibited by the Milk Control Law, supra. The legislature, the court concluded, did not make all advertising allowances illegal, and the burden was upon the commission to show that the motive of the milk dealer in giving these advertising allowances was other than

to carry out an honest and legitimate advertising program. The motive is not important. It is the effect of the transaction which determines whether it constitutes a method or device to sell milk at a price less than the minimums set by the commission. The effect of the transactions was to permit the income of some of the dealer's large customers to be increased through payments made to them by the dealer for a purpose connected with the sale of the dealer's milk.

The court below seriously considered the value of the advertising to the appellee, and found that the advertising was profitable to it. We believe whether or not the advertising was profitable is irrelevant. All kinds of advertising allowances, and all types of rebates and price cutting are believed to be profitable by business men, including milk dealers, or they would not grant them.

The methods and devices whereby milk can be sold at a price less than the minimum fixed by the commission are as unlimited as the genius of man. One of the more obvious methods is the advertising allowance, and the legislature specifically listed this as one of the devices upon which it frowned.

Milk control is founded upon price control. As soon as dealers find a method or device to break down the commission's control over the price actually being paid, milk control will become chaotic, and soon non-existent. The legislature understood this. It is evident from reading Section 807 of the Milk Control Law, supra, that it attempted, by every conceivable means, to close every "loop hole" which would enable one dealer to obtain a price advantage over another. As stated by our Supreme Court in *Colteryahn Sanitary Dairy v. Milk Control Commission*, 332 Pa. 15, 31, 1 A. 2d 775 (1938), milk regulation "has been held constitutional. It is the duty of the courts to aid it as far as possible in the interest of health and sanitation."

We said in *Shearer's Dairies, Inc. v. Pennsylvania Milk Control Commission,* supra, 191 Pa. Superior Ct. 574, 580, 159 A. 2d 268 (1960), "Although the vast majority of milk dealers seem to comply with both the spirit and letter of the law, nevertheless, numerous methods have been devised by various dealers in an effort to furnish customers things of value which have the effect of selling milk products at less than the established minimum price." The favored five customers of the appellee received monthly payments of $2310.60 from the dealer from whom they purchased milk. This made the customers' net indebtedness to the appellee substantially less each month than they would have been to any other milk dealer selling them the same amount of milk.

It is argued that the advertising allowance does not violate the Milk Control Law because the amount of allowance is not tied to the amount of purchases made by the customers from the dealer. The amount paid by the dealer to the customer need not necessarily be determined by the amount or price of the milk purchased by the customers from the dealer. Although it is not determinative of the issue, it might be noted that there is some relationship between the amount of business done by the customers and the allowances made to them for advertising. In the first place, the allowances are not made to all of the dealer's customers, but only to those who operate self-service stores, which class of grocers, as the appellee states in his brief, accounts for 80% of the grocery sales although constituting only 50% of the stores. Furthermore, the number of carts in use in a store is undoubtedly related in some degree to the probable quantity of milk and other products sold in the store.

Counsel for appellee, in his able presentation of its legal position, questions the constitutionality of the

Milk Control Law as interpreted and applied by the commission in this case.

A law which purports to be an exercise of police power must not be unreasonable, unduly oppressive, or patently beyond the necessities of the case. Furthermore, the means which it employs must have a real and substantial relation to the objects sought to be attained. *Milk Maid Dairy Products v. Pennsylvania Milk Control Commission,* supra, 190 Pa. Superior Ct. 410, 413, 154 A. 2d 274 (1959).

The presumption, however, is in favor of constitutionality. *Tranter v. Allegheny County Authority,* 316 Pa. 65, 75, 173 A. 289 (1934); *Loushay Appeal,* 169 Pa. Superior Ct. 543, 548, 83 A. 2d 408 (1951). To doubt is to decide in favor of an act's constitutionality. *Rohrer v. Milk Control Board,* 322 Pa. 257, 260, 186 A. 336 (1936); *Commonwealth v. Lukens,* 312 Pa. 220, 223, 167 A. 167 (1933); *Keator v. Lackawanna Co.,* 292 Pa. 269, 273, 141 A. 37 (1928).

If the payments made to the customers by a dealer were advertising allowances which constitute a method or device to sell milk at a price less than the minimum price, then the commission's order is constitutional. The Milk Control Law is constitutional, *Rohrer v. Milk Control Board,* 322 Pa. 257, 186 A. 336 (1936), and the control of the price of milk is constitutional. *Colteryahn Sanitary Dairy v. Milk Control Commission,* supra, 332 Pa. 15, 1 A. 2d 775 (1938). The statutory provision here involved and the order here made are necessary parts of the price control machinery, and are also constitutional. "Price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt . . ." *Rohrer v. Milk Control Board,* supra, pages 271, 272.

Paying a customer for advertising a milk dealer's product seems innocuous standing alone, but when its effect upon price control is considered, it becomes apparent that the maintenance of the price structure established by the commission is threatened by this practice. It has frequently been held that a transaction which is innocuous if considered separately, may nevertheless be included in the scope of a general prohibitory measure designed to accomplish a purpose within an admitted governmental power. *Purity Extract Co. v. Lynch,* 226 U. S. 192, 201 (1912) ; *Commonwealth v. Stofchek,* 322 Pa. 513, 522, 185 A. 840 (1936) ; *Grime v. Department of Public Instruction,* 324 Pa. 371, 383, 384, 188 A. 337 (1936) ; *Milk Maid Dairy Products, Inc. v. Pennsylvania Milk Control Commission,* supra, 190 Pa. Superior Ct. 410, 417, 154 A. 2d 274 (1959).

The order of the court below is reversed and the order of the commission is reinstated.

ERVIN, J., dissents.