## Commonwealth v. King

Before Weiss, J. (Fifth Judicial District), Weaver, P. J. (Eighteenth Judicial District) and Graff, P. J. (Thirty-third Judicial District), Specially Presiding.

*George Ross*, Assistant District Attorney, for Commonwealth.

*Berger & Berger*, for defendant.

GRAFF, P. J. (Thirty-Third Judicial District, Specially Presiding), August 22, 1963.—Defendant, W. L. King, was indicted, charged with the crime of libel. Upon trial of the case the jury returned a verdict of not guilty, and directed that defendant pay the costs. This matter now comes before us upon a motion in arrest of judgment.

The jury returned a verdict of not guilty upon November 9th, without disposing of the costs. They were then sent back for further consideration, to determine who should pay the costs, and upon the same day returned a verdict that defendant should pay the costs. Sentence was then imposed, that defendant pay the costs within 10 days. The motion now before us was not filed until November 15th, being six days after the verdict was returned. The rules of the quarter sessions court require that any motion for a new trial or in arrest of judgment must be filed within four days after the return of the verdict. This was not done. No motion has been filed praying the court to set aside the judgment against defendant as to payment of costs.

In support of the motion it is contended by defendant that he is not charged with an indictable offense, and, secondly, that the Act of 1860, 19 PS § 1222, under which a jury may assess costs against a defendant acquitted of a misdemeanor is unconstitutional, under amendment 14 of the United States Constitution, and art. 1, sec. 9, of the Pennsylvania Constitution.

The indictment charges that defendant King, being editor of a certain publication titled "The Voice of the Nazarene", did therein unlawfully print and publish certain false and malicious defamatory libel under the caption of "The Oath of the Knights of Columbus." The indictment not only named the organization known as

the Knights of Columbus, but also individual officers thereof as being libeled, that is to say, Luke Hart, the Supreme Knight, Harold J. Lamboli, the Supreme Advocate, Warren F. O'Donnell, State Deputy of Pennsylvania, Frank J. Cook, State Advocate of Pennsylvania, F. W. Reis, Jr., Past State Deputy of Pennsylvania, and Robert P. Sheehan, Special Representative, all of the Knights of Columbus. The alleged oath as published by defendant was clearly defamatory, particularly in that it advocated disloyalty to the government, and, in addition thereto, advocated the crime of murder.

Section 412 of the Act of June 24, 1939, P. L. 872, 18 PS §4412, provides as follows:

"Whoever writes, prints, publishes or exhibits any malicious or defamatory libel, tending either to blacken the memory of one who is dead, or the reputation of one who is alive, thereby exposing him to public hatred, contempt or ridicule, is guilty of libel, a misdemeanor . . . ."

The testimony at the trial disclosed that the alleged oath was clearly false. In the publication it is set forth that this oath was published in the Congressional Record. In 1913, such oath was published in the Congressional Record, but it was done so under the definite statement that it was false. This latter statement was not contained in the publication of defendant, and the inference was clear that it was a true and correct statement of the oath administered to the Knights of Columbus. Under the Pennsylvania Constitution the principal question submitted to the jury was whether the publication had been maliciously made.

The Knights of Columbus is a corporation consisting of more than 1,000,000 members throughout the United States. Defendant now contends that under the Act of 1939, supra, a corporation cannot be libeled, and therefore no indictable offense has been charged. The fallacy of this argument is that individual members of the cor-

poration are named as being libeled. It is true that these names did not appear in the publication. However, the implication is clear that they were meant, to the same effect as if they had been specifically mentioned. The organization is different from an ordinary business corporation, in that it consists of a great number of persons composing the membership. It is plain that the oath administered to the membership must have been composed and approved by the high officers of the organization, otherwise it would not have been administered.

Defendant cites Commonwealth v. Cochran, 16 Dist. R. 313, and also Commonwealth ex rel. v. McNeil, 87 Pitts. L. J. 175. In each of these cases the libel charged was against a business corporation, and not individuals. Both of these cases conclude that under the Act of 1939, supra, a corporation cannot be libeled in Pennsylvania. They have no application to the case now under consideration, for the reason that the indictment charges libel against individuals, who, as officers of the corporation, plainly by implication are included in the defamatory publication. We conclude that an indictable offense is charged, and this position of defendant is without merit.

It is next contended that the application of the statute to defendant under the facts in this case constitutes an abridgement of his right of freedom of speech, and of the press, guaranteed under article 1, sec. 7, of the Pennsylvania Constitution, and under amendments 1 and 14 of the United States Constitution. Libelous statements are not protected by the first and fourteenth amendments to the Constitution of the United States, nor are they protected by section 7, art. 1, of the Pennsylvania Constitution, guaranteeing freedom of the press: Commonwealth v. Acquiviva, 187 Pa. Superior Ct. 550, affirming per curiam 14 D. & C. 2d 285. In this case it is stated as follows: (p. 291)

"The next question is whether the statute is in violation of the First Amendment to the United States Constitution which guarantees freedom of speech. While this amendment originally applied only to the powers of the Federal Government, when the Fourteenth Amendment was adopted the First Amendment became a definition of the liberties which the State could not abridge: Zorach v. Clauson, 343 U. S. 306. But the guarantee of freedom of the press is limited by the law of slander and libel: Caldwell v. Crowell-Collier Pub. Co., 161 F. 2d 333, 336 (Certiorari denied, 332 U. S. 766). Libelous utterances are not within the area of constitutionally protected speech: Roth v. United States, [354 U. S. 476]."

It is therefore clear that if a libelous statement has been published it is not protected by either the United States Constitution or the Pennsylvania Constitution. We observe in this connection that it is difficult to conceive of a more defamatory publication than the one for which defendant is responsible.

It is next contended that the application of the libel statute violates the right to freedom of religion guaranteed under amendments 1 and 14 of the United States Constitution. The libel staute of 1939 in no sense attempts to interfere with the religious beliefs of defendant. There is no restraint on him pursuing his religious activities in any sense that he desires, as long as he does not infringe upon the legal rights of others. The constitutional guaranty cannot be made a shield for violation of criminal laws which are not designed to restrict religious worship or a free press: Davis v. Beason, 133 U. S. 333; Knowles v. United States, 170 Fed. 409; Cleveland v. United States, 146 F. 2d 730.

Defendant next contends that the "clear and present danger test" should apply in this case. Libelous utterances, not being within the area of constitutionally pro-

tected free speech, may be punished without the appearance of a clear and present danger of a serious substantive evil: Beauharnais v. Illinois, 343 U. S. 250.

We conclude that all of the reasons heretofore advanced by defendant in support of the motion are without merit.

It is contended by defendant that the verdict assessing costs against him must be set aside, because the Act of March 31, 1860, P. L. 427, sec. 62, 19 PS §1222, is unconstitutional, under the fourteenth amendment to the Constitution of the United States, and article 1, sec. 9, of the Constitution of Pennsylvania. This act of assembly provides as follows:

"In all prosecutions, cases of felony excepted, if the bill of indictment shall be returned ignoramus, the grand jury returning the same shall decide and certify on such bill whether the county or the prosecutor shall pay the costs of prosecution; and in all cases of acquittal by the petit jury on indictments for the offences aforesaid, the jury trying the same shall determine, by their verdict, whether the county, or the prosecutor, or the defendant, shall pay the costs, or whether the same shall be apportioned between the prosecutor and the defendant, and in what proportions."

This act of assembly is in substance a reenactment of the Act of December 7, 1805; 4 Smith's Laws 204. For more than a century and a half the Criminal Courts of Pennsylvania have followed the practice and procedure of requiring the jury to determine who should pay the costs, in all misdemeanors petty in character. The act of assembly as it relates to the imposition of costs has been considered by both the Supreme and Superior Courts upon many occasions, and its validity has consistently been sustained. A statute may not be declared unconstitutional unless it violates the Constitution clearly, palpably, plainly, and in such manner as to leave no doubt or hesitation in the court's mind. One

who claims a statute is unconstitutional must prove beyond all doubt that it is so; it is a canon of statutory construction that the legislature does not intend to violate the Constitution of the United States, nor of this Commonwealth: Rubin v. Bailey, 398 Pa. 271.

The presumption is always in favor of constitutionality: Milk Control Com. v. Rieck Dairy Div., 193 Pa. Superior Ct. 32; Breslow v. Baldwin Twp. Sch. Dist., 408 Pa. 121.

In Commonwealth v. Tilghman, 4 S. & R. 127, the validity of the Act of 1805, supra, was upheld. In Wright v. Commonwealth, 77 Pa. 470, where the defendant was adjudged not guilty but directed to pay the costs, the court held that under section 62 of the Criminal Procedure Act of 1860, the jury may impose costs upon an acquitted defendant, although the indictment be so defective that no conviction could have been had upon it. An examination of this case discloses that the constitutionality of this act of assembly was raised by defendant, and although the court did not comment upon such in its opinion, nevertheless the provisions of the act were uphold. In Commonwealth v. Keenan, 67 Pa. 203, the court held that costs may be imposed upon a defendant by a petit jury under a defective indictment. In Commonwealth v. Hall, 291 Pa. 341, it is held that the statute relating to costs, and statutes which use the jury as an agency for such purposes, involve a legislative interweaving of the jury into the administrative phase of the criminal law which cannot be abolished by the judiciary. The validity of the act was recognized in Long v. Lancaster County, 16 Pa. Superior Ct. 413. See Commonwealth v. Kocher, 23 Pa. Superior Ct. 65; Commonwealth v. Shaffer, 52 Pa. Superior Ct. 230.

In Commonwealth v. Tremeloni, 93 Pa. Superior Ct. 432, the lower court set aside the costs imposed upon defendant, and upon appeal this action was reversed, as

being a clear abuse of discretion, and the costs reimposed upon defendant. In Commonwealth v. Cohen, 102 Pa. Superior Ct. 397, Judge Keller reviewed various authorities dealing with the Act of 1860. Upon page 400 he stated as follows:

"The history of the law in reference to the imposition of costs in cases of misdemeanor and the province of the court and jury in reference thereto is stated at length in Com. v. Kocher, 23 Pa. Superior Ct. 65 and we need not here do more than direct attention to it. The practice under section 62 of the Act of 1860 was referred to and upheld by the Supreme Court in the recent case of Com. v. Hall, 291 Pa. 341, 351, which pronounced it 'a legislative interweaving of the jury into the administrative fabric of the criminal law which cannot be abolished by the judiciary,' and cited with approval the decision of this court in Long v. Lancaster County, 16 Pa. Superior Ct. 413, sustaining the authority and duty of the traverse jury to dispose of the costs in misdemeanors.

"In proper cases the court may, on application, relieve the prosecutor or the defendant from the arbitrary and unjust placing of the costs upon him, but in the absence of circumstances that would warrant the court in refusing to permit a verdict, imposing costs against either the prosecutor or the defendant, to stand, the matter of disposing of the costs, even on a directed verdict of 'not guilty', should be submitted to the jury, leaving the oversight of the verdict, in case of an arbitrary and unjust imposition of costs, to the court; for in some cases the jury may be of opinion that the prosecutor should pay them, or in others, that while the defendant is not guilty of the charge he was not wholly free from fault, etc. (See Sadler's Criminal Procedure, p. 492, sec. 614), or that both prosecutor and defendant were in some respect blamable in the matter, and the costs should be divided between them,

rather than imposed on the county. However anomalous the course may appear to jurisdictions unfamiliar with our procedure, it is the law of this Commonwealth and it works substantial justice.

"The general subject has been considered by the Supreme Court in Com. v. Tilghman, 4 S. & R. 127; Baldwin v. Com., 26 Pa. 171; Wright v. Com., 77 Pa. 470; Linn v. Com., 96 Pa. 285, and there is nothing in any of them that conflicts with the views expressed above. The appellant attempts to construe an excerpt from the opinion in Linn v. Com., supra, which reads: 'Where [the indictment] sufficiently charges an offense, a failure to convict for want of evidence does not take from the jury the control of the costs in cases of misdemeanors. But where an offense is *neither charged nor proved* the jury have nothing to do with the costs, nor have they any duties to perform whatever,' as if it said that the jury have nothing to do with the costs where *either* the indictment charges no offense *or* the offense is not proved. That is not its meaning; but rather, that where there is *both* an insufficient indictment *and* a lack of proof of the offense, the jury have nothing to do with the costs."

Judge Keller there states that however anomalous the course may appear to jurisdictions unfamiliar with our procedure, it is the law of this Commonwealth, and it works substantial justice.

Defendant contends that to impose costs upon him would punish him for some conduct of which he had no notice, and concerning which there is no reasonably ascertainable standard by which the jury may impose costs, and that under such circumstances the imposition of costs is in violation of the fourteenth amendment to the United States Constitution, as well as section 9, art. 1, of the Pennsylvania Constitution. Under the act of assembly, supra, defendant had notice that he would be required to pay the costs, in the event

of acquittal, if the jury concluded that such should be the case. The standard by which costs may be placed upon the defendant must arise out of the particular case upon trial. As a factual matter, from vast experience in the trial of cases, juries are reluctant upon occasions to adjudge a defendant guilty, and seek the alternative of not making a record against him, but requiring him to pay the costs, because of his reprehensible conduct. The Constitution does not require impossible standards; all that it requires is that the language conveys sufficiently definite warning as to the prescribed conduct, when measured by common understanding and practice: Roth v. United States, supra. See also Commonwealth v. Acquaviva, supra, 14 D. & C. 2d 283, 289; Com. ex rel. Ryan v. Rundle, 411 Pa. 613, 616.

Undoubtedly defendant had definite warning that his conduct, which would cause the bringing of a charge against him, could be considered so serious and reprehensible as to warrant the jury imposing the costs upon him, in the event of a verdict of not guilty. The nicety or precision of such conduct would be impossible of exact definition, to guide the jury in making its finding. The imposition of costs upon a successful litigant is not unknown to the courts of Pennsylvania. In equity, the orphans' court, and upon appeal to the appellate courts, costs may be placed where justice requires them to be, even though they be placed upon the successful party. The practice and procedure of placing costs upon an acquitted defendant who is not completely innocent or without fault has been a salutary and effective way of administering the criminal law. Misdemeanors have always been considered petty in character, as compared with felonies, and consequently a difference arises in the imposition of costs, in these categories. The question might well be asked as to why the county should pay costs, when the con-

duct of the defendant has been such as to bring the case against him into a court. The same thing applies to the prosecution. If there is an improper disposition of the costs here upon the prosecutor or defendant, there always may be an appeal to the court to be relieved of such, if the circumstances warrant it. We cannot agree that the statement in Commonwealth v. Franklin, 172 Pa. Superior Ct. 152, 194, to wit: "The evil of the [statute] we are considering is that it is in reality an effective power to punish in virtually unrestrained form" applies here.

In order to justly permit the costs to remain upon the defendant he must have been guilty of serious and reprehensible conduct, otherwise the lower court and the appellate court have the right to relieve him of such payment. We do not consider the present case comparable in any sense to the one considered in Commonwealth v. Franklin, supra. There the power exercised by the court could be exercised totally unconnected with a charge under an indictment, and the bond required of a defendant who "was not of good fame" could be of such magnitude that the person involved could be imprisoned for a great length of time. Such is not the present case, which is limited to the costs of prosecution, and arises out of the very trial of the case itself.

Defendant complains that the costs are excessive, and unlawful, in part. If such be the fact, he has two methods to pursue. He may ask that the costs be taxed, or he may present a petition requesting that he be relieved of the costs in whole or in part. He has pursued neither course.

Defendant King has published a statement so outrageous that any reasonable person would know it to be untrue. When he was advised of the untruthfulness of the publication, and what was contained in the Congressional Record, he refused to desist from further

publication, and it was only when a restraining order of the Court of Equity of Allegheny County was issued that he desisted. Prior to the actual trial of the case persons involved upon both sides were called into the judge's chambers. It was there agreed upon the part of the prosecution that if defendant would retract his statement, the district attorney's office would be requested to ask the court for a nolle pros, and this we agreed to do, and place the costs upon the county, if the retraction would be forthcoming. This was declined by the defendant. Whilst defendant states that he is a minister of the Gospel, he seems to have completely forgotten that part of Holy Writ to the effect that a good name is rather to be chosen than great riches.

The Supreme Court in Purcell v. Westinghouse Broad. Co., 411 Pa. 167, 173, states as follows:

"A man's good name is as much his possession as his physical property. It is more than property, it is his guardian angel of safety and security; it is his lifesaver in the sea of adversity, it is his parachute when he falls out of the sky of good fortune, it is his plank of rescue in the quicksands of personal disaster." The publication unquestionably attempted to defile the good name of the persons set forth in the indictment, and he is not completely without fault, or an innocent person.

We conclude that the indictment charges an indictable offense under the act of assembly, that defendant is not protected by any constitutional provision, either of the United States or Pennsylvania, and inasmuch as the Act of 1860, supra, has been upheld upon numerous occasions, by both appellate courts, in one of which the constitutionality of such act was questioned, we are bound by the decisions of the appellate courts until such courts rule otherwise. The motion in arrest of judgment should be refused.

*Order*

And now, August 22, 1963, the motion in arrest of judgment is refused.

Eo die: exception granted and bill sealed.