HARRY B. FONDA ET. AL., PROSECUTORS, v. CORNELIUS C. O'DONOHUE, W. BRADFORD SMITH, JOSEPH E. AMOROSE, HARRY T. CALLAHAN AND ANDREW W. ALLEN, COMPOSING THE BOARD OF ADJUSTMENT OF THE CITY OF ORANGE, ET AL., RESPONDENTS.

Submitted May 14th, 1932—Decided November 10, 1932.

Before Justices TRENCHARD, CASE and BROGAN.

For the prosecutors, *Roger Hinds.*

For the respondents, *Hood, Lafferty & Campbell* (*Harry Schaffer,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J. This is a zoning case. The prosecutors (eight neighboring owners) obtained this writ to review the decision and resolution of the Orange board of adjustment overruling the building inspector, and recommending a special exception to the zoning ordinance in favor of the respondent Woman's Club of Orange permitting a structure and uses in the residence "A" zone admittedly prohibited by the ordinance; also reviewing the concurring action and resolution

of the board of commissioners authorizing the issuance of the permit.

The Woman's Club applied to the building inspector for a permit to erect a club house, auditorium and concreted parking area. The inspector refused the permit on the ground of the prohibition of the ordinance. The Woman's Club appealed to the board of adjustment, asking for a special exception.

Since the premises do not abut, and are not within one hundred and fifty feet of, any district where the proposed structure and use would be permitted, the appeal was taken under subdivision 4 of section 9 of the zoning statute (*Pamph. L.* 1928, *ch.* 274), empowering the board of adjustment to recommend, and the governing body to approve or disapprove the issuance of a permit to the appellant.

On November 30th, 1931, the board of adjustment, over the protests of the prosecutors and other adjacent and neighboring owners, and *without taking any proof,* overturned the adverse decision of the building inspector and passed its resolution recommending to the board of commissioners that the permit be issued; and on the following day the board of commissioners, without taking any proof, passed a resolution "concurring" in the recommendation of the board of adjustment and "authorizing" the issuance of the permit.

On December 16th, 1931, the prosecutors were allowed this writ.

The prosecutors assign numerous reasons for reversal. Without expressing any opinion respecting the others, we confine ourselves to the one which we deem to be fundamental and plainly insurmountable, namely, that the action of the respondent boards was illegal because taken without any legal evidence which, in the circumstances of the present case, was essential.

The plans and specifications show a building containing an auditorium seating eight hundred and ninety-six persons, with a large theatre stage, ball room, game room, banquet and reception rooms, cloak rooms, smoking rooms, kitchens, ticket office and other facilities.

The club intends to rent out such facilities in its proposed structure for public dances, theatrical performances, concerts, cabarets, debates and other public gatherings.

The plans also show a concreted parking area accommodating one hundred and sixty outomobiles.

Such a proposed structure and use, in the residence "A" zone, is prohibited by the Orange zoning ordinance under at least two different categories, viz.:

(1) Section 2 (a) expressly forbids, in residence "A" zone, the erection or use of a building for any business permitted in section 5, including dance halls, concert halls and theatres.

(2) Section 2 (a) (7) permits, in the "A" zone, only such "accessory uses" as are "customary or incident" to the specified permissible uses (and a one hundred and sixty-car parking area is obviously not "customary or incident" to any specified permissible use).

The Woman's Club admitted that the structure and use are forbidden by the ordinance. It offered no testimony or proof whatsoever either before the board of adjustment or the board of commissioners, although its attorney stated to the board of adjustment that the appeal was based solely on the interest of the community and the improvement the club house would make to the property and its surroundings.

Written and oral protests were made by the prosecutors and other neighbors, including the owners of sixty-three per cent., by frontage, of the lots within two hundred feet, on the ground that the noise and confusion of automobiles and entertainments would depreciate their property and destroy its residential character. One of the prosecutors objected that the board's *power to recommend special exceptions is limited* to cases where the *evidence* shows that *hardship* might result from enforcing its terms or be out of keeping with the *general purpose* of the zoning law; that the power exists only where (under the statute and section 10 (c) of the ordinance) "there are practical difficulties or *unnecessary hardships* in the way of carrying out the strict letter" and where *"substantial justice"* would result from a variance. He further objected that "the Woman's Club *had not shown any*

*of these things,"* and that, under the circumstances the proposed exercise of discretion would be "very *palpably beyond the powers of this body."*

Notwithstanding these protests the board passed the resolution of which prosecutors here complain. It made no findings that *unnecessary hardship or practical difficulties would result from enforcing the ordinance, or that substantial justice would be done by making a special exception:* or that the latter would be in harmony with the general purpose of the statute and ordinance, but did make a finding that the "adjacent property would not be injuriously affected," for which there was no supporting evidence whatsoever. So far as appears the board made no inspection of the premises or the neighborhood. Thereafter, without notice to the prosecutors, and in their absence, the board of commissioners adopted a resolution "concurring" in the recommendation of the board of adjustment and "authorizing" the issuance of the permit. The board of commissioners took no proofs and made no findings.

Now, we think that the respondent boards acted illegally in overturning the adverse decision of the building inspector, and permitting a non-conforming structure and use without legal evidence.

Where, as here, the building inspector refused a building permit, because admittedly prohibited by the zoning ordinance, and an appeal is taken to the board of adjustment pursuant to subdivision 4 of section 9 of chapter 274 of *Pamph. L.* 1928, to obtain a special exception permitting a non-conforming structure and use, it is illegal for the board of adjustment to recommend and for the board of commissioners to approve such special exception and thus overturn the adverse decision of the building inspector, in the absence of legal evidence tending to establish facts which are made prerequisites of such exercise of power by the statute and ordinance, and to overcome the presumption that the ordinance was reasonable in its application. *Sharff* v. *East Orange Board of Adjustment,* 6 *N. J. Mis. R.* 905; *Chancellor Development Co.* v. *Senior,* 4 *Id.* 633; *Benbak Con-*

*struction Co.* v. *Orange Board,* 6 *Id.* 543, 544; *Smith* v. *Kearny Zoning Board of Appeals, Ibid.* 954, 956; *Hendey* v. *Ackerman,* 103 *N. J. L.* 305, 309; *Concord Development Co.* v. *Dowling,* 6 *N. J. Mis. R.* 552, 554.

The Orange zoning ordinance, adopted on May 11th, 1922, was continued in effect by the present zoning statute (*Pamph. L.* 1928, *ch.* 274, *p.* 698, § 7), as though it had been adopted under the provisions of the statute.

The power of the board of adjustment with respect to "special exceptions" is given it by section 9 of the statute of 1928.

Thereby it is given power in *appropriate cases,* and subject to *appropriate conditions and safeguards,* to make *special exceptions to* the terms of the ordinance *in harmony with its general purpose* and intent and *in accordance with general or specific rules* therein contained. Its chairman has power to issue subpœnas for the attendance of witnesses and the production of records and may administer oaths. All meetings of the board shall be *open to the public.* The board shall keep minutes of its proceedings, and shall keep *records of its examinations* and other official actions, all of which shall be immediately filed in the office of the board and shall be a public record. Appeals to the board may be taken by any person aggrieved or by any officer of the municipality affected by any decision of the administrative officer.

By subdivision 4 of section 9 the board is given power to recommend in writing to the governing board, upon appeal in specific cases, that a structure or use be allowed in a district restricted against such structure or use where the lands in respect of which such recommendation is made do not abut a district in which such structure or use is authorized by the zoning ordinance or where, as here, such lands are more than one hundred and fifty feet beyond the boundary line of the district in which such structure or use is allowed by the zoning ordinance; and in case such recommendation shall be approved by the governing body, then the administrative officer in charge of granting permits shall forthwith issue a permit for such structure or use.

As we have seen, under these statutory provisions "special exceptions" may be made "upon appeal in specific cases" only where they are "in harmony with the general purpose and intent [of the ordinance] and in accordance with the general or specific rules therein contained."

The "general rule" of the Orange ordinance with respect to varying from the strict letter of the provision in specific cases is found in section 10 (c) thereof, as follows:

"(c) Where there are *practical difficulties* or *unnecessary hardships* in the way of carrying out the strict letter of the provisions of this ordinance the board of appeals shall have power in a specific case, after due notice and public hearing, to vary any such provision *in harmony with the general purpose and intent of the ordinance* so that the public health, safety and general welfare may be secured and *substantial justice done.*"

Inasmuch as the premises in the case at bar do not lie within one hundred and fifty feet of the boundary of any district in which the proposed structure or use is authorized (or in fact within one hundred and fifty feet of the boundary of any district), it was rightly assumed that subdivision 4, and not subdivision 3, of section 9 of the statute of 1928, covers the procedure and the showing of "unnecessary hardship" and "substantial justice" is made necessary by the terms of the ordinance, as provided by the first paragraph of section 9 of the statute of 1928. In this case there was no such proof.

It follows, therefore, that the actions of the respondent boards cannot stand in view of the established rule that a board of adjustment may not overturn an adverse decision of a building inspector, and make or recommend a special exception, permitting a non-conforming structure or use, in the absence of legal evidence tending to establish facts which are made prerequisites of such exercise of power by the statute and ordinance.

The respondents in this connection rely on the case of *Newark Athletic Club* v. *Newark Board of Adjustment,* 7 *N. J. Mis. R.* 55. But that case is not in point. In that

case there was of course no necessity for taking evidence, since the *ordinance permitted the structure,* and the court made that distinction clear.

The decisions and resolutions brought up for review will be reversed and set aside, with costs.