SAFEWAY STORES, INCORPORATED, AND FRANK ZEISS, PROSECUTORS-APPELLANTS, v. ANTHONY J. BOTTI, JUDGE OF THE FIRST CRIMINAL COURT OF THE CITY OF JERSEY CITY, AND CITY OF JERSEY CITY, DE-FENDANTS-RESPONDENTS.

Submitted January 20, 1948—Decided July 23, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutors, *Carpenter, Gilmour & Dwyer* (*James D. Carpenter, Jr., Elmer James Bennett* and *James P. Beggans,* of counsel).

For the respondents, *Charles A. Rooney* (*Edward M. Malone* and *James Rosen,* of counsel).

The opinion of the court was delivered by

HEHER, J. The question for decision here is the legal sufficiency of an ordinance adopted by the defendant City of Jersey City on September 7th, 1943, providing that "no owner or operator" of "a retail meat store" in the municipality—defined as "any establishment, market, shop or concession * * * selling fresh or uncooked meats at retail"—shall "open or transact any business for the sale of meat at retail on the second day of the week commonly called 'Monday.'"

It was recited in the ordinance that "the war has created an acute emergency condition resulting in the shortage of meat available for distribution to the people of Jersey City;" that "it is essential and necessary because of the emergency conditions arising out of the war effort to close all retail meat stores in Jersey City on the second day of the week * * * for the purpose of conserving electricity and power, aiding the shortage of manpower, and to give the retail meat dealer an opportunity to obtain meats and meat products to enable him to allocate the same equitably and fairly to his customers and people of Jersey City;" and that "all of the owners of retail meat stores in Jersey City have requested the closing of all retail meat stores on Monday of each week during the period of the present war emergency and for six months thereafter." It was provided that the ordinance "shall take effect immediately and shall continue in full force and effect during the present war emergency and for six months thereafter;" and, "For the purpose of this ordinance, the present war emergency" was "defined to be the period of time during which the United States of America continues in the present wars with the governments of Japan, Germany or Italy or any one of them." The ordinance was enacted in the purported exercise of the power conferred by *R. S.* 40:48–2 and 40:52–1.

Prosecutors were convicted and fined upon a complaint charging that on October 27th, 1947, they "did then and there transact business for the sale of meat at retail" in violation of the cited provisions of the ordinance; and thereupon they sued out a writ of *certiorari* to review the judgment of conviction.

We have no occasion to consider whether, viewed in the light of the proclaimed objectives, the limitation of the class thus regulated to the operators of stores for the retail sale of "fresh or uncooked meats" is unreasonable, arbitrary and discriminatory and constitutes a denial of the constitutional guaranties of due process and the equal protection of the laws. If it be conceded *arguendo* that the declared emergency affected a basic interest of the community at large justifying at the time the exertion of the police power for the common

good, and that the means were reasonable and appropriate for the protection of that interest, the emergency which brought the regulation into being has long since ceased to exist and the ordinance has become *functus officio*. A regulation depending upon the existence of an emergency or other certain state of facts to uphold it loses its force and authority upon the termination of the emergent condition or a change in the basic facts, even though valid when passed. The subsistence of the exigency upon which the continuation of the law depends is always open to judicial inquiry. The operation of the regulation itself could not validly outlast the emergency. *Hourigan* v. *Township of North Bergen,* 113 *N. J. L.* 143.

We take judicial notice of the complete cessation of the conditions which gave rise to the emergency found by the local legislative body. We also direct attention to the President's message to the Congress on February 19th, 1947, relating to the termination of "the great majority of emergency controls over the Nation's economy" during "the year and a half that have elapsed since the defeat of our last enemy in battle," recommending the repeal of certain emergency statutes, and requesting the executive departments and agencies to cease operations under powers "derived from certain permanent statutes that are effective only during emergencies, to the extent that such operations are related to the 1939 and 1941 emergencies." Assuming for the purposes of discussion that the means employed bore a real and substantial relation to the declared object of the legislation, the "emergency conditions arising out of the war effort" no longer exist.

The judgment of conviction is set aside, with costs.