LAMPERT DAIRY FARM, INC., A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., APPELLANTS, AND GARDEN STATE FARMS, INC., INTERVENING APPELLANT, v. FLOYD R. HOFFMAN, DIRECTOR, OFFICE OF MILK INDUSTRY, AND DAIRY PROCESSORS AND HANDLERS OF NEW JERSEY, INC., RESPONDENTS, AND BORDENS FARM PRODUCTS CO. OF NEW JERSEY, ET AL., AND ATZINGEN-WHITEHOUSE DAIRIES, INC., ET AL., INTERVENING RESPONDENTS.

Argued June 5, 1962—Decided June 29, 1962.

*Mr. David I. Stepacoff* argued the cause for the appellants.

*Mr. Nicholas Martini* argued the cause for the intervening appellant.

*Mr. William L. Boyan,* Deputy Attorney General, argued the cause for the respondent, Floyd R. Hoffman, Director, Office of Milk Industry (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Frederic K. Becker* argued the cause for the respondents, Dairy Processors and Handlers of New Jersey, Inc. and intervening respondents, Atzingen-Whitehouse Dairies, Inc., et al. (*Messrs. Wilentz, Goldman, Spitzer & Sills,* attorneys).

*Mr. Willis F. Daniels,* of the Pennsylvania Bar, argued the cause for intervening respondents, Bordens Farm Products Co. of New Jersey, et al. (*Mr. Richard W. DeKorte,* attorney, and on the brief).

The opinion of the court was delivered

PER CURIAM. After a public hearing, held pursuant to *N. J. S. A.* 4:12A–23, the Director of the Office of Milk Industry issued Order 60–4 establishing a formula by which minimum resale fluid milk prices for the various methods of distribution and the various container sizes in effect in

Area I (the 13 northern counties in New Jersey) were tied to the monthly fluctuations in the minimum producer price set by the Secretary of Agriculture through the federal Market Administrator. The existing price differentials between the various methods of distribution, *i. e.,* dealer to consumer, dealer to store, store to consumer, dealer to subdealer, and the existing price differentials between the various containers, *i. e.,* quarts, half-gallons and gallons, were not altered by the order. Prior to the issuance of the order, fixed minimum resale prices were established and remained in effect until changed by the Director, notwithstanding that the federally controlled prices for raw milk paid to the producer varied from May-June lows to November highs.

In arriving at his conclusions, the Director relied on a composite profit-and-loss statement prepared by The Milk Dealers' Association of Northern New Jersey and covering the preceding year's overall operations of 12 northern New Jersey milk dealers. He recognized these companies as being representative of the industry as a whole. The Director found that when dealers sold their milk at the pre-existing minimums, they realized a reasonable profit only when they purchased raw milk at the producer prices prevailing during the May-June period in 1960, *i. e.,* $4.88 per hundred weight; that at other periods of the year dealers were obliged to sell above the pre-existing minimums in order to operate without a loss. Therefore the Director's new schedule was geared to provide dealers with a reasonable profit each month of the year. Accordingly, he set the new minimums so that they coincided with the pre-existing minimums when raw milk was priced at $4.88 per hundredweight, and fluctuated as the raw milk price changed. Because the old minimums corresponded to what was expected to be the lowest producer price, the effect of this order is to increase generally all resale minimums in force prior to its promulgation except for the months of May and June. The anticipation is that during the re-

maining ten months of the year the new resale minimums will exceed the pre-existing minimums by amounts varying between one-half cent and three cents per quart.

Four milk dealers appealed from the order, alleging that it was procedurally defective and not based upon adequate findings of fact. We certified the cause on our own motion. As the case was presented to us, it appeared that the appellants differed from milk dealers generally in that the appellants were "bulk or jug-sales dealers"—that is, the predominant part of their operations concerned the sale of fluid milk in one-half gallon and gallon containers. Their primary argument revolved around the assertion they were operating profitably at the minimum prices in effect under the existing schedule, Order 60–1. They contended that since Order 60–4 would compel them to sell at higher prices, it would adversely affect their competitive market position and force the consuming public to pay more for milk bought from them. We assumed the same argument could be advanced by dealers who primarily sell milk from vending machines. Since the Director had not investigated the cost factors in the operations of bulk sales and vending machine dealers, and since the consuming public might be adversely affected by an increase in minimums for these methods of marketing, we remanded the matter to the Director to investigate the cost factors experienced by these types of dealers. 35 *N. J.* 205 (1961). Because we could not foresee the problems which might arise as a result of the investigation and the effect which their solution might have upon the overall order, we stayed the operation of Order 60–4 until the record was supplemented. We retained jurisdiction pending the remand.

The Director proceeded to investigate the financial operations of the four appellants and to conduct hearings. At the conclusion of these hearings he found that the costs of two of the appellants, Cornell Dairy Farms and Maplehurst Farms, could not be satisfactorily determined; that one of the appellants, Garden State Farms, Inc., experienced

greater costs than the cross section of the industry; and that Lampert Dairy Farm, Inc. experienced costs less than the cross section of the industry. He further found that if the appellants' operations and costs were included in the composite statement of the 12 dealers the differences in the results would be insignificant because of "the foregoing findings and the very small percentage of the market supplied by the appellants." The Director concluded that no change should be made in the schedule of minimum prices contained in Order 60–4. The matter was returned to us pursuant to our remand order.

We have reviewed the record compiled by the Director at the supplemental hearings. The testimony elicited, unlike the hearing held prior to the first appeal, delved deeply into the operations of the appellants and now presents us with a much clearer picture of the nature of their operations. Before the record was supplemented, we understood that each of the appellants sold most of its milk in one-half gallon and gallon containers. The record now reveals that though these dealers do not uniformly sell most of their milk in the larger containers, they do sell proportionately more of their milk in one-half gallon and gallon containers than do dealers in the area generally. We also learned for the first time that they sell their milk almost exclusively through retail stores. On the other hand the 12 dealers, whose composite records the Director has accepted as a representative cross section of the industry, sell most of their milk in quart containers delivered to the home or wholesale to stores. It was shown that presently in Area I about 90% of all the milk sold is packaged in quart containers. The major portion of the remainder is packaged in one-half gallon containers and a lesser quantity in gallon containers.

Up until recent years the percentage of milk sold in quart containers in Area I was fairly typical of that prevailing elsewhere in the nation. At the oral argument we were told that in recent years there has been a rapid shift

throughout the nation away from the sale of quart containers and to one-half gallon and gallon containers; that by 1960 more milk was sold in the larger containers than was sold in quarts. This shift appears to have been accompanied by a marked trend away from home deliveries and to the sale of milk in stores. We cannot say why the buying preferences of consumers in Area I are out of step with the national trend. The appellants have submitted to us a resumé of prices prevailing in several metropolitan areas in eastern United States. Though a similar compilation was submitted to the Director at the hearings, he refused to accept it. The resumé before us shows that, though the quart price may not vary significantly, when consumers in the other areas purchase their milk from stores in larger containers instead of in quarts, they pay substantially less money than do those consumers who purchase their milk in a similar manner in Area I. The resumé also shows that the store-home price differential for both quarts and larger containers is greater in other areas than in Area I. Thus the money saved probably induced the change in consumer buying preferences. While we do not know what factors elsewhere cause the disparity, the fact that the spread exists to such a marked degree should prompt the Director to re-examine each aspect of his minimum price schedule to ascertain whether each price is based upon those cost factors applicable to it in Area I.

We believe that a minimum price should be established only after the Director has considered those cost factors consistently associated with the method of distribution and size of container to which the price applies. Any composite study such as the profit-and-loss statement of the 12 dealers which was the basis for the proposed schedule in Order 60–4 can shed no light on these factors. The composite profit-and-loss statement of the 12 dealers contains no breakdown of the costs relating to methods of distribution or container sizes, *i. e.*, the differentials among dealer to consumer, dealer or subdealer to store, store to

consumer, dealer to subdealer, quarts to one-half gallons, and quarts to gallons. And the study of the operations of the appellants did not uncover cost data sufficient to sustain the propriety of the proposed minimums in relation to each other. In fact, the studies of only two of the four appellants, Lampert Dairy Farm, Inc. and Garden State Farms, Inc., produced any cost data. Though the Director found that Lampert Dairy Farm, Inc. was operating at a "considerable profit," he said that its unit costs could not be taken as typical of the industry as a whole because Lampert's wages and other costs were below the industry standard. The study of Garden State Farms, Inc. was conducted at a time when it was in the midst of changing its operation from a subdealer oriented sales program to a retail store oriented sales program. At the time of the study, Garden State's volume was off 83% from the previous year. Thus its unit costs could not be accepted as typical of a normal milk operation. Though the Director had before him time studies pertaining to the differences in bottling milk in the various containers which tended to support the established differentials, these studies were of extremely limited scope and were conducted under unfavorable conditions. Because of these factors and also because the studies were restricted to costs associated solely with the bottling operation, they cannot support minimums which, as we have said, should reflect all costs consistently associated with the method of distribution and the size of the container. Thus the record still leaves unanswered the question of whether the minimum prices proposed in Order 60–4 are reasonably based.

From our study of the case we have the impression that the minimum prices established for the various categories of distribution and container sizes enumerated in Order 60–4, instead of reflecting the true costs involved in these categories, seek to maintain the status quo in the methods of distribution and container sizes which in the past fulfilled the desires of the consumer. As mentioned above, the

buying habits of consumers elsewhere in the nation are shifting. If given an incentive to buy larger containers in stores, the consumers in Area I may follow the national trend.

Order 60–4 substantially and uniformly raises price minimums. Since much of the milk delivered to homes in quart containers has been selling at more than the minimums established under Order 60–1, while much of the milk sold in stores in quarts or packaged in the larger containers has apparently been selling at those minimums, Order 60–4 is likely to further limit any economies the consumer can achieve by purchasing at stores in either quarts or larger containers. Before we can properly sanction such a result there must be evidence to support the conclusion that the minimums realistically reflect cost factors, and that one method of distribution or type of container is not subsidized at the expense of another unless the record discloses the subsidy and the extent thereof is justifiable in light of the statutory objective. See Preamble to *N. J. S. A.* 4:12A–1 *et seq., L.* 1941, *c.* 274; *N. J. S. A.* 4:12A–22.

The appellants (Maplehurst abandoned its appeal during the hearings on remand) have asked us to modify Order 60–4 and decrease the minimum gallon price by at least 13¢ and the half-gallon price by at least 6¢. However, the record before us does not support the establishment of any specific minimum prices for these containers.

In light of the above, the matter is remanded to the Director to hold a hearing on notice and present evidence himself, as well as take evidence from interested persons as to cost factors consistently associated with the various methods of distribution and container sizes. He may conclude that these factors necessitate a readjustment of the minimum prices contained in Order 60–4. If so, he should promulgate a new order. On the other hand, he may conclude a readjustment is not warranted. In either event, we expect he will make findings of fact and state the reasons upon which his findings and conclusion are based

and supply us with an adequate record upon which we can review the findings and reasons. We retain jurisdiction and will hear the matter promptly after the foregoing is completed. In the meantime, the stay of Order 60–4 is continued and Order 60–1 remains in effect.

*For remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.