76 N.J. Super. 189 (1962)
184 A.2d 4
FLOYD R. HOFFMAN, DIRECTOR OF THE OFFICE OF MILK INDUSTRY, DEPARTMENT OF AGRICULTURE, STATE OF NEW JERSEY, PLAINTIFF,
v.
GARDEN STATE FARMS, INC., STATE FARMS STORES, INC., LAMPERT DAIRY FARM, INC. AND FARM STORES, INC., CORPORATIONS OF THE STATE OF NEW JERSEY, DEFENDANTS.
FLOYD R. HOFFMAN, DIRECTOR OF THE OFFICE OF MILK INDUSTRY, DEPARTMENT OF AGRICULTURE, STATE OF NEW JERSEY, PLAINTIFF,
v.
BELLEVILLE DAIRY, INC., FARM STORES, INC., AND MEADE DAIRY FARMS, INC., CORPORATIONS OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 23, 1962.
*190 Mr. Theodore I. Botter, First Assistant Attorney General, for plaintiff (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
*191 Mr. Nicholas Martini for defendants Garden State Farms, Inc. and State Farms Stores, Inc.
Mr. David I. Stepacoff for defendants Lampert Dairy Farm, Inc. and Farm Stores, Inc.
Mr. Ralph C. De Rose for defendants Belleville Dairy, Inc., Farm Fair Stores, Inc. and Meade Dairy Farms, Inc. (Messrs. De Rose and Serratelli, attorneys).
MINTZ, J.S.C.
These proceedings are before the court on orders to show cause why an injunction should not issue in each case restraining and enjoining the defendants according to the demands of the respective complaints. Plaintiff also moves for summary judgment for a permanent injunction or, in the alternative, for an interlocutory injunction. Prior to the return of said orders to show cause defendants moved to vacate the ad interim restraints contained therein. By agreement those motions were adjourned and considered on the return of the orders to show cause.
Plaintiff is the Director of the Office of Milk Industry (herein referred to as "OMI") which was established pursuant to the Milk Control Act, N.J.S.A. 4:12A-1 et seq. (herein referred to as "act"). Defendants Garden State Farms, Inc. (herein referred to as "Garden State") and Lampert Dairy Farm, Inc. (herein referred to as "Lampert Dairy") are dealers licensed under the act. Defendant State Farms Stores, Inc. owns and operates licensed retail stores through which it sells to consumers milk purchased from Garden State in reusable gallon and half-gallon deposit containers. Mr. Peter Sandfort is president and principal stockholder of Garden State and State Farms Stores, Inc. Similarly, Farm Stores, Inc., duly licensed under the act, operates retail stores through which it sells milk in gallon and half-gallon jugs or containers. Mr. Samuel Lampert is the president of Lampert Dairy and Farm Stores, Inc.
*192 Defendant Belleville Dairy, Inc. is a licensed milk dealer and processor under the act, and defendant Farm Fair Stores, Inc. is licensed to operate stores. Defendant Meade Dairy Farms, Inc. (herein referred to as "Meade Dairy") is a corporation of New Jersey not licensed under the act, but purports to operate the retail stores of Farm Fair Stores, Inc. Mr. Leslie Woodruff, Jr. is the president of Belleville Dairy, Inc. and sole stockholder of Meade Dairy.
Each of the complaints alleges an interlocking identity or management and ownership between the respective milk dealers, processors and companies engaged in operating retail stores selling milk to the public. N.J.S.A. 4:12A-30 declares it to be unlawful and contrary to the public interest for any licensee or other person or corporation to operate under any mutual or secret agreement, arrangement, combination, contract or common understanding whereby the price of milk to be paid by stores or consumers for such milk is decreased.
The complaints assert that pursuant to statutory authority (N.J.S.A. 4:12A-22) plaintiff promulgated Order 60-1 which establishes minimum prices in the sale to consumers of milk in gallon containers at $1.02 and in half-gallon containers at $.52. This order has been in effect for some time, and the State Supreme Court recently stated in Lampert Dairy Farm, Inc. v. Hoffman, 37 N.J. 598, 606 (June 1962) that "Order 60-1 remains in effect."
Plaintiff, on March 15, 1957, promulgated Regulation H-5, effective March 31, 1957. This regulation, insofar as pertinent hereto, provides that "No licensee of the Office of Milk Industry shall give or lend anything of value to any customer served by the licensee or solicited to be served by the licensee * * *."
On or about July 17, 1958 Garden State and Lampert Dairy began a program of distributing milk refund certificates and bottle tops, respectively, to each purchaser of a gallon or half-gallon container of milk at the stores of their respective allied corporations.
*193 The Garden State certificate is labeled "Milk Freedom Certificate." The face of the certificate admittedly distributed to each purchaser of a gallon container states:
"On the day on which retail milk controls established by the Office of Milk Industry are abolished in New Jersey, or declared void by the courts, Garden State Farms, Incorporated, will authorize payment to the bearer hereof the sum of fifteen cents upon surrender of this certificate. This certificate may be redeemed upon the conditions set forth and listed on the reverse side hereof."
The reverse side of the certificate reads as follows:
"Bearer may redeem this certificate for the sum of fifteen cents upon meeting the following conditions:
1. Certificate must be redeemed at location as specified by Garden State Farms when certificate has matured.
2. This certificate must be endorsed on the line below by the bearer upon presentation and surrender.
 x ______________________
 Signature
3. This certificate is void one year after the date upon which it matures, as stated on the face hereof, or on January 1, 1964."
The certificates distributed with sales of half-gallons are identical except that they are redeemable for eight cents each. Concurrently with the first distribution of milk freedom certificates, Garden State began advertising the certificates in the local newspaper and by window notices stressing the issuance of cash refund certificates redeemable "when milk controls are abolished."
It is further alleged that on or about July 17, 1962 defendant Farm Stores, Inc. commenced issuing certain bottle tops and fliers or handouts. With the sale of half-gallon bottles of milk were distributed bottle tops with black print reading:

"SAVE  LAMPERT DAIRY FARM, INC.  [*]  HALF GALLON."

(The asterisk represents a black star.)
*194 With the sale of gallon bottles of milk were distributed bottle tops with red print reading:

"SAVE  LAMPERT DAIRY FARM, INC.  [*]  GALLON."

(The asterisk represents a red star.)
The handouts distributed to purchasers of milk by Farm Stores, Inc. read in part:

"LAMPERT DAIRY FARM INC.

CONSUMER

TREASURE CAPS
SAVE YOUR LAMPERT DAIRY FARM INC. CAPS WITH THE STAR EMBLEM. THEY ARE WORTH 15 CENTS ON THE PURCHASE OF A GALLON GLASS JUG AND 7 CENTS ON THE HALF GALLON GLASS JUG.

* * * * * * * *
LAMPERT WILL CHEERFULLY PAY YOU 15 CENTS FOR EACH RED-STAR CAP AND 7 CENTS FOR EACH BLACK STAR CAP as soon as such payments are approved by the New Jersey Milk Director and the State courts. If no approval is forthcoming, Lampert will gladly turn the money over to your favorite charity."
The complaint against Farm Fair Stores, Inc. and Meade Dairy alleges that commencing on or about July 22, 1962 defendants individually or in concert commenced to distribute one "Jug Milk Certificate" purporting to have a face value of eight cents with each sale of milk in a half-gallon container, and two of said certificates with each sale of milk in one gallon containers. Said complaint further recites that:
"The said milk certificate contains, on the face thereof, in part the following:

MEADE DAIRY FARMS INC. Operators of

FARM FAIR

JUG MILK CERTIFICATE
This certificate may be redeemed at the store where issued on or after the day on which retail milk price control is ended in New Jersey  subject to conditions on reverse side.
 Meade Dairy Farms, Inc.
 Operators of FARM FAIR
 President Les Woodruff Jr.
*195 The said certificate, on the back thereof, contains the following:

MEADE DAIRY FARMS INC. Operators of

FARM FAIR

JUG MILK CERTIFICATE
1. Redeemable as specified on reverse side for the sum of eight cents (8¢).
2. This certificate shall be void on Dec. 31, 1963.
3. Persons redeeming certificate must endorse same on line provided upon demand by store attendant.
 x _____________________"
 signature
Notices on the Farm Fair Stores, Inc. premises where said milk was sold read as follows:

"CASH JUG MILK CERTIFICATES

Cash them in when State Milk Prices are ended.

You Pay OMI You Pay OMI
 Price 1/2 Gal. ...... 52¢ Price Gallon .......... 1.02
Jug Milk Certificate ...  8¢ Jug Milk Certificate .....  .15
 ____ _____
Your Cost Minus Cert. Your Cost Minus
 Value Only HALF Cert. Value Only
 GAL. ................. 44¢ GALLON ................. 87¢"

Plaintiff learned through newspaper sources of the proposed plans of defendants. On July 17, 1962 he sent telegrams to the presidents of defendant corporations advising that "it would appear" that their respective plans constitute "a violation of the law and regulations as they exist today," and suggesting that they present to his office the full facts for an opinion before acting. This was not done. Notwithstanding said telegrams the programs were initiated and duly advertised. Shortly thereafter milk dealers instituted an action to enjoin such activities on the part of Garden State and Lampert. An ad interim restraint was issued in that proceeding on or about July 21, 1962. An interlocutory injunction was denied on July 26, 1962 on the ground that private milk dealers were not entitled to such relief. Thereafter defendants resumed issuing refund *196 certificates and bottle tops. On July 27, 1962 plaintiff sent another telegram to defendants stating that according to the opinion of the Attorney General's office their activities constituted violations of the statute and regulations governing the sale of milk and requested discontinuance of the practice, but defendants persisted in their program of issuing refund agreements.
Each complaint also contains a second count asserting that the course of dealing of defendants or any one or more of them shows an intent to deceive or defraud consumers in matters regulated by the provisions of the Milk Control Act. The third count in said complaints alleges that under Regulation F-33 of the OMI dated April 16, 1953, and still in effect, it is provided that both the buyer and the seller will be held responsible for any violation where by agreement or other arrangement the price to be paid for milk is decreased.
The first ad interim restraint in the present proceedings was issued on July 28, 1962 against Farm Fair Stores and Meade Dairy. (No ad interim restraint was issued against Belleville Dairy, Inc., and plaintiff, on these motions, seeks no injunctive relief against said defendant.) On July 31, 1962 a similar ex parte order was issued against Garden State, State Farms Stores, Inc., Lampert Dairy and Farm Stores, Inc., restraining them from issuing any certificates and "consumer treasure caps" designed to provide any rebate, discount or other consideration in connection with the sale or distribution of milk, and from advertising or promulgating any course of dealing or program concerning any such offer.
The plaintiff's motions are predicated upon N.J.S.A. 4:12A-44 which provides:
"Any habitual violation of the act or of any of the orders or rules or regulations made pursuant to the act may be restrained by the Superior Court in an action brought for such purpose by the Attorney-General on behalf of the director."
*197 Concededly, defendants sell milk from their stores at $1.02 per gallon and $.52 per half-gallon, the established price under Order 60-1, but, as already observed, with every sale defendants Garden State and Meade Dairy, respectively, offer certificates or bottle caps evidencing their promise to refund 8 cents per half gallon or 15 cents per gallon, payable on the date on which retail milk price controls are ended. Garden State certificates are void one year after date of maturity, or on January 1, 1964. Simultaneously with the distribution of the first issue of its "Milk Freedom Certificates," Garden State deposited a sum equal to the full aggregate face value of said certificates in a special bank account in the name of "Garden State Farms, Trustee for Milk Freedom Certificates." Meade Dairy certificates are void on December 31, 1963. Lampert offered to pay 7 cents per half-gallon and 15 cents per gallon "as soon as payments are approved by the New Jersey Milk Director" or the state courts, and "if no approval is forthcoming" it unconditionally agrees to turn money over to the purchaser's favorite charity. There is no cutoff date on the Lampert refund arrangement.
The refund certificates and bottle caps were admittedly issued not only to arouse public opinion over the alleged high price of milk as stressed by defendants, but also to induce consumers to purchase defendants' milk. Their advertisements stress the value of these certificates and bottle caps, redeemable when price controls are lifted. For example, Lampert Dairy handouts issued to purchasers of milk at their retail outlets urged the consumer to "START SAVING YOUR VALUABLE LAMPERT CONSUMER TREASURE CAPS TODAY. WATCH YOUR SAVINGS GROW!" One wonders why the consumer was encouraged to save a "valuable treasure cap" now asserted by this defendant to be of no value.
A conditional promise to pay "when able" constitutes a sufficient consideration to support a contractual obligation. City of Camden v. South Jersey Port Commission, *198 4 N.J. 357 (1950), affirming and modifying 2 N.J. Super. 278 (Ch. Div. 1949). See also Lutz v. Ryno, 1 N.J. 363 (1949).
"[T]he possibility that the condition may happen involves a chance of detriment which is sufficient to make the promise valid consideration." 1 Williston, Contracts (3d ed. 1940), § 103, p. 395.
True, the contingency  namely, the ending of milk price controls  may never occur, but the fact remains that defendants' customers are purchasing milk on better terms than they can get from other stores which adhere to minimum prices and offer no agreement or expectation of a cash refund. In depositing funds in the trustee bank account, Garden State itself apparently recognized that the certificates are of some value to consumers induced to purchase its milk.
A somewhat similar device to evade the Maryland Fair Trade Law was held invalid in Cooley v. White Cross Health & Beauty Aid Discount Centers, Inc., Md., 183 A.2d 381 (Ct. App. 1962). The pertinent statutory provision prohibited the making of any rebates, refunds, discounts or other concession which would result in decreasing the minimum retail sale price of fair traded products. There the retailer advertised that until he could legally pass on savings to the purchaser, he offered to contribute a percentage of the sales receipts to a charity designated by the purchaser. The court held this privilege to be valuable directly to the customer and indirectly to the charitable organization and that it involved price cutting of fair traded products.
In Milk Control Com'n v. Rieck Dairy Division, etc., 193 Pa. Super. 32, 163 A.2d 891, 894 (Super. Ct. 1960), the court construed a section of Pennsylvania's Milk Control Law which banned price evasion schemes by enumerating illustrative practices to be prohibited, and there stated:
"The methods and devices whereby milk can be sold at a price less than the minimum fixed by the commission are as unlimited as the *199 genius of man * * *. Milk control is founded upon price control. As soon as dealers find a method or device to break down the commission's control over the price actually being paid, milk control will become chaotic, and soon non-existent. The legislature understood this. It is evident from reading Section 807 of the Milk Control Law * * * that it attempted, by every conceivable means, to close every `loop hole' which would enable one dealer to obtain a price advantage over another."
Sperry & Hutchinson Co. v. Margetts, 15 N.J. 203 (1954), is clearly distinguishable. That decision dealt with a price posting law, whereas this court is concerned with a price fixing law and regulation. It was held in Sperry that the statute prohibiting a "rebate," "allowance," "concession," or "benefit" making for sales below the posted price for the retail sale of gasoline should not be construed to prevent the giving of S. & H. green stamps in connection with sales of gasoline. The court said such practice constituted a "cash discount" on the posted price, a common trade practice, and was not within the statutory interdiction designed to prevent fraud. Additionally, it appears that on February 27, 1956 the Director was called upon to interpret Regulation F-29, then in effect, which was substantially similar to the present Regulation H-5. The Director indicated that the giving of trading stamps in connection with the sale of milk constituted a violation of the OMI regulations, and the statute pertaining to the sale of milk, and circularized a letter to all chain store operators to that effect. This determination, according to plaintiff, has been respected by the retailers.
The issuance of the refund certificates and bottle caps constitutes "things of value" within the meaning and purview of N.J.S.A. 4:12A-30 and Regulation H-5. They are designed to circumvent the price structure prescribed by Order 60-1. This court will not countenance the violation of the letter and spirit of the law under the guise that defendants' practices are merely part of an educational program intended to dramatize their views and to arouse public opinion concerning the high prices of milk.
*200 Defendants urge that plaintiff has failed to exhaust his administrative remedies. The Director may after due notice and hearing suspend or revoke a license for a violation of the act or of any promulgated rule or regulation. N.J.S.A. 4:12A-34, 35. They contend that these remedies are exclusive where there has been no prior administrative determination that the licensee is an habitual violator within the meaning of N.J.S.A. 4:12A-44. Such remedies are not exclusive. In State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504 (E. & A. 1935), injunctive relief was granted to prevent violation of the earlier Milk Control Act. Plaintiff sought the injunction urging that the defendant was an habitual violator of the rules, orders and regulations of the Board. The court said, at page 514:
"The statute confers jurisdiction to restrain habitual violations of its provisions, and authorizes the filing of a bill for the injunctive process in the name of the state, on the relation of the milk control board. It is designed to effectuate a policy deemed vital to the health and welfare of the people of the community, and penalties are prescribed to enforce its provisions. The remedy by injunction is an added means of making effective the orders promulgated to accomplish the legislative purpose." (Emphasis added)
There is no merit to the contention that the licensee must first be adjudicated an habitual violator in an administrative procedure or in some other forum before this court may restrain habitual violations. N.J.S.A. 4:12A-44 imposes no such prerequisite. The uncontradicted evidence indicates that a multitude of redeemable certificates and bottle caps were issued by the defendants. It was frankly indicated that if the restraints were dissolved, the practices would be resumed. It clearly appears from the proofs submitted that the defendants have committed habitual violations of the act and regulations made pursuant thereto and will resume such violations unless restrained.
Defendants contend that no interlocutory injunction should issue in that plaintiff has failed to show irreparable injury. It is unnecessary to determine whether or not *201 plaintiff's affidavit establishes such proof. The precise argument was advanced and rejected in American Fruit Growers v. United States, 105 F.2d 722 (9 Cir. 1939). In that case an injunction pendente lite issued to restrain the violation of a regulatory order made by the Secretary of Agriculture under the Agricultural Adjustment Act, as amended, 7 U.S.C.A. § 601 et seq. The court there said, at page 725:
"We think allegations of such facts were unnecessary, because of 7 U.S.C.A. § 608(a)(6). Congress apparently concluded that a violation of a valid order would cause irreparable injury, in that the theory expressed by the act required restriction on shipments and unless the fixed restrictions were complied with, the act would serve no purpose. By 7 U.S.C.A. § 608(a)(6) Congress authorized an injunction upon a showing of violation alone."
See also 43 C.J.S. Injunctions § 123 (1955).
Plaintiff seeks injunctive relief, not under the inherent equity power of the court, but by virtue of express statutory authority based upon a showing of habitual violation of the act, N.J.S.A. 4:12A-44. Accordingly, irreparable injury need not be shown. The Legislature, in enacting section 44 of the act, has determined that a violation per se of the act warrants equitable interposition to restrain habitual violations. State Board of Milk Control v. Newark Milk Co., supra.
Defendants urge that there is no longer a need to maintain price controls over milk because the emergency upon which the legislation was predicated has terminated. They contend that the sections of the act, orders and regulations of the Director pertaining to the maintenance of price controls, should therefore be adjudged unconstitutional. Significantly, this issue was not projected in the earlier proceeding pertaining to the validity of Order 60-4.
As already observed, the Supreme Court in Lampert Dairy Farm, Inc. v. Hoffman, supra, has stayed Order 60-4 and remanded the matter to the Director to hold hearings relative to cost factors consistently associated with the various *202 methods of distribution and container sizes. The Director is to make findings of fact and the Supreme Court is to be furnished with an administrative record upon which it can review the findings and reasons set forth by the Director. That court retained jurisdiction, stayed Order 60-4, and specifically stated that Order 60-1 remains in effect.
Orderly procedure dictates that a determination of whether or not there are such present emergent conditions as to justify the continuance of fixed minimum prices be initially adjudicated in the administrative tribunal. Although the issue is projected as a constitutional issue by the defendants, it is intertwined with factors that call for an understanding of the milk industry and the making of factual determinations. The Director of the OMI is specially equipped to inquire, in the first instance, into the facts and should not be by-passed. Cf. United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946); United States v. Ideal Farms, Inc., 262 F.2d 334 (3 Cir. 1958); United States v. Turner Dairy Co., 166 F.2d 1 (7 Cir. 1948); Roadway Express, Inc. v. Kingsley, 37 N.J. 136 (1962). Courts generally decline to grant relief where there is an adequate administrative remedy available. Interstate Milk Handlers v. Hoffman, 34 N.J. Super. 356 (App. Div. 1955). While in exceptional cases judicial review may be had before exhaustion of administrative remedies, the interests of justice do not here dictate that extraordinary course. Judicial review from a determination of the Director of the OMI is available by way of an appeal to the Appellate Division of the Superior Court. N.J.S.A. 4:1-34; R.R. 4:88-8. Defendants should not be permitted to attack collaterally the validity of the subject legislation. Cf. Schaffer v. Federal Trust Co., 132 N.J. Eq. 235 (Ch. 1942).
The Milk Control Act (N.J.S.A. 4:12A-52) expressly provides that it shall be effective until such date as the *203 Legislature shall terminate its operation by finding that an emergency no longer exists and the exercise of the police power of the State is no longer necessary. The Legislature has not made any such determination. In this connection the court in Como Farms, Inc. v. Foran, 6 N.J. Super. 306, 314 (App. Div. 1950), stated:
"The legislative declaration of emergency is entitled to be respected in the absence of contrary proof and the fact that such emergency as may currently exist in the field of milk control may be different in kind from that presented in 1941 is not significant. See East New York Savings Bank v. Hahn, 326 U.S. 230, 235, 66 S.Ct. 69, 90 L.Ed. 34, 38 (1945); Block v. Hirsh, 256 U.S. 135, 154, 41 S.Ct. 458, 65 L.Ed. 865, 870 (1921). We have concluded that the Milk Control Act of 1941, as modified by P.L. 1948, c. 447, remains in effect."
Safeway Stores, Inc. v. Botti, 137 N.J.L. 437 (Sup. Ct. 1948), is clearly distinguishable. The court there took judicial notice of the complete cessation of conditions which gave rise to the emergency found by the local legislative body and declared the ordinance to be invalid. The proofs here do not present a comparable situation.
Defendants assert discrimination on the part of the OMI in the enforcement of Regulation H-5. This allegation is categorically denied in the detailed affidavit of the plaintiff. Moreover, it affords no legal basis upon which to deny injunctive relief.
It is not for this court to pass upon the propriety of the price differentials and minimum prices prescribed for the sale of milk under Order 60-1. Nor should this court pass upon the wisdom of legislation authorizing price controls in the sale of milk. The court's function in these proceedings is to administer the law as it presently exists and to restrain habitual violations of the Milk Control Act, and the Order and Regulation made pursuant thereto.
An interlocutory injunction will issue. The defendants will be enjoined from issuing any certificates, agreements, promises, coupons, bottle caps or tops, including cash refund *204 certificates and "consumer treasure caps" and any other items or things designed to provide or promise any rebate, discount, redemption, premium, or other consideration in connection with the sale or distribution of any and all milk regulated pursuant to the provisions of the Milk Control Act of New Jersey, within the State of New Jersey, and from advertising, publicizing, or promulgating any course of dealing, scheme, plan or program concerning any such offer, distribution or gift. It necessarily follows that the motions to vacate the ad interim restraints are denied.
The motions for summary judgment are denied. Defendants have not filed answers to the complaints and should have the opportunity to do so before such motions are entertained. Defendants are hereby permitted to file answers within ten days from the date hereof. Cf. Salem County Beagle Club v. Diggs, 1 N.J. Super. 564 (Ch. Div. 1948).
Appropriate orders will be submitted, consented to as to form or be settled upon notice.