STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ANTHONY J. CHIARULLI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 15, 1989—Decided June 26, 1989.

Before Judges LONG and MUIR, Jr.

*Philip Stephen Fuoco* argued the cause for appellant.

*Larry R. Etzweiler,* Deputy Attorney General, argued the cause for respondent (*Peter N. Perretti, Jr.,* Attorney General, attorney; Larry R. Etzweiler, on the letter brief).

The opinion of the court was delivered by

LONG, J.A.D.

Defendant Anthony Chiarulli entered a plea of guilty to a charge of violating *N.J.S.A.* 2C:17–1d. In support of the plea, defendant stated that he hired Ricky Williams to burn his Cadillac and agreed to pay Williams $300 from the insurance proceeds. According to defendant, Williams did burn the car but was apprehended before he could be paid.

In return for the plea, the State agreed to recommend that defendant be sentenced as if for a second degree crime and to dismiss other charges pending against him. Defendant was sentenced to a custodial term of eight years and received an appropriate Violent Crimes Compensation Board penalty. No challenge to the sentence is advanced.

Defendant appeals raising a single issue:

THE PROVISION IN *N.J.S.A.* 2C:17–1d THAT ONE WHO "DIRECTLY OR INDIRECTLY, PAYS OR ACCEPTS ANY FORM OF CONSIDERATION" FOR STARTING A FIRE COMMITS A CRIME IN THE FIRST DEGREE MAY NOT BE APPLIED TO A DEFENDANT WHO PROMISED SUCH PAYMENT.

In sum, defendant's argument is that his agreement to pay Williams out of the insurance proceeds falls outside the statutory language. He contends that the plain meaning of the word "pays" in the statute does not include a promise to pay in the future. Because he never obtained the insurance proceeds which were to provide the basis of his payment to Williams, defendant argues that he never "paid" Williams and therefore

did not provide an adequate factual basis for his plea. In our view, this is an unwarranted interpretation of the statute. *N.J.S.A.* 2C:17–1d provides that:

> Any person who, directly or indirectly, pays or accepts any form of consideration including, but not limited to, money or any other pecuniary benefit, for the purpose of starting a fire or causing an explosion in violation of this section commits a crime of the first degree.

The evil addressed by this statute is arson for hire. In using the broad legal term "directly or indirectly, pays ... consideration", it seems to us that the Legislature intended that virtually any exchange of value to induce the setting of a fire would suffice for liability. In fact, the statute does not limit consideration to "money or any other pecuniary benefit." The exchange of any favor for the setting of a fire is what is proscribed. Here, defendant paid Williams with a promise to provide money in the future. Such a promise is the payment of consideration. *See, e.g., Friedman v. Tappan Development Corp.,* 22 *N.J.* 523, 533–534 (1956); *Summer v. Fabregas,* 52 *N.J.Super.* 399, 406–407 (App.Div.1958); *Hoffman v. Garden State Farms, Inc.,* 76 *N.J.Super.* 189, 197–198 (Ch. Div.1962). Indeed it is an exact parallel to the issuance of a check or other negotiable instrument except that the promise here was not evidenced by a writing. Like a check which is a promise to pay a sum certain in the future (*N.J.S.A.* 12A:3–104), the promise here is the payment of good and valuable consideration. *See N.J.S.A.* 12A:3–802 (a negotiable instrument extinguishes the obligation for which it is given until such time as it is dishonored). The mere fact that defendant's promise was conditional, or was contingent upon his receiving the insurance proceeds for the burned Cadillac, did not detract from its status as the payment of "consideration" under the statute. *See City of Camden v. South Jersey Port Comm'n,* 4 *N.J.* 357, 371 (1950); *Hoffman v. Garden State Farms, Inc., supra,* 76 *N.J.Super.* at 197–198.

In enacting this statute, the Legislature broke with the Model Penal Code's grading of arson offenses and differentiated be-

tween arson for the purpose of collecting insurance (a second or third degree offense depending on whether another person is placed in danger) and arson for hire (a first degree offense). The Model Penal Code does not contain a specific arson for hire provision. *Model Penal Code* § 220.1. Obviously the Legislature had a specific goal in mind in separately identifying and enhancing the grading of arson for hire. In the absence of legislative history addressing this provision, its impact can only be gleaned from the language of the statute itself. Viewed on the backdrop of the entire act and more particularly in light of the separate prohibitions against arson for insurance, the only conduct the Legislature could have meant to target in the first degree section is the act of inducing another by the promise of value to start a fire. Presumably the Legislature viewed the studied and deliberate act of contracting for arson as reflecting the most culpable state of mind. For this reason and in conformity with the philosophy expressed in *N.J.S.A.* 2C:1–2a(5) that the new criminal code was meant to "differentiate on reasonable grounds between serious and minor offenses," the first degree provision was enacted. What is prohibited by this provision is exactly the conduct in which Chiarulli engaged when he hired Williams, and the fact that money never changed hands is of no moment.

Defendant cites our decision in *State v. Allison,* 208 *N.J.Super.* 9 (App.Div.1985) in support of his interpretation. In assessing a merger claim, we stated in *Allison* that "*N.J.S.A.* 2C:17–1d ... makes it a crime to pay or accept payment for the purpose of starting a fire." *Id.* at 25. Our language in *Allison* was dictated by the facts before us which involved an actual payment for the setting of a fire and was not meant to circumscribe the meaning of the statute in any way. *See State v. Miller,* 108 *N.J.* 112, 118 (1987) (stating that the scope of *N.J.S.A.* 2C:17–1d includes the act of "offering" a payment).

Further, in reaching our conclusion, we have considered the murder for hire provision in New Jersey's death penalty stat-

ute. *See N.J.S.A.* 2C:11–3c(4)(d), (e).[1] Defendant argues that a comparison of the language in this provision supports his narrow reading of *N.J.S.A.* 2C:17–1d. We disagree. The fact that the Legislature used the phrase "promise of payment" in the murder statute might have relevance if we were interpreting an equivocal enactment or one which was narrowly drafted. That is not the case here. Where, as here, the statute is straightforward and is facially broader in all respects than the murder statute, the fact that the Legislature used the "promise of payment" language there is of no moment to our interpretive task.

Affirmed.

---

[1] The provision of the death penalty statute which lists murder for hire as an aggravating factor to be considered at sentencing states the following:

(4) The aggravating factors which may be found by the jury or the court are:

. . . . . . .

(d) The defendant committed the murder as consideration for the receipt, or in expectation of the receipt of anything of pecuniary value;
(e) The defendant procured the commission of the offense by payment or promise of payment of anything of pecuniary value. [*N.J.S.A.* 2C:11–3c(4)(d), (e)].