82 N.J. Super. 452 (1964)
198 A.2d 106
BURLINGTON FOOD STORES, INC., A NEW JERSEY CORPORATION, AND CUMBERLAND FARMS OF NEW JERSEY, INC., A NEW JERSEY CORPORATION, APPELLANTS,
v.
FLOYD R. HOFFMAN, DIRECTOR OF THE OFFICE OF MILK INDUSTRY, DEPARTMENT OF AGRICULTURE, RESPONDENT. BURLINGTON FOOD STORES, INC., A NEW JERSEY CORPORATION, AND CUMBERLAND FARMS OF NEW JERSEY, INC., A NEW JERSEY CORPORATION, PETITIONERS,
v.
FLOYD R. HOFFMAN, DIRECTOR OF THE OFFICE OF MILK INDUSTRY, DEPARTMENT OF AGRICULTURE, DEFENDANT. FLOYD R. HOFFMAN, DIRECTOR OF THE OFFICE OF MILK INDUSTRY, DEPARTMENT OF AGRICULTURE, STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CUMBERLAND FARMS OF NEW JERSEY, INC., AND BURLINGTON FOOD STORES, INC., CORPORATIONS OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Considered March 3, 1964.
Decided March 3, 1964.
*454 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Alan B. Handler, Deputy Attorney General, for Floyd R. Hoffman, Director of the Office of Milk Industry (Mr. Arthur J. Sills, Attorney General; Mr. Donald M. Altman, Deputy Attorney General, of counsel; Mr. Handler and Mr. Richard Newman, Law Assistant, on the brief).
Mr. Grover C. Richman, Jr. for Burlington Food Stores, Inc. and Cumberland Farms of New Jersey, Inc. (Messrs. Richman, Berry & Ferren, attorneys).
*455 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
These three consolidated actions involve an order of the Director of the Office of Milk Industry (Director) ordering Cumberland Farms of New Jersey, Inc. (Cumberland) and Burlington Food Stores, Inc. (Burlington) to cease and desist from distributing coupons, hereinafter described, in connection with the sale of gallon and half-gallon containers of milk and redeemable in cash on certain conditions.

I.
Cumberland is licensed as a milk dealer under the Milk Control Act, N.J.S.A. 4:12A-1 et seq. Burlington is licensed under that act and operates stores throughout the State. The two corporations have interlocking identity or management and ownership. Under N.J.S.A. 4:12A-7 and 20 the Director is empowered to adopt, promulgate and enforce all rules, regulations and orders necessary to carry out the objects and provisions of the act. Further, under the Emergency Milk Control Law of 1962, as amended, N.J.S.A. 4:12A-59 et seq., the Director is authorized to fix the minimum prices that may be charged consumers of milk. Pursuant to such authority he promulgated Regulation H-17 on December 11, 1963, establishing minimum prices on the sale by stores to consumers of milk in gallon containers at 87¢ and in half-gallon containers at 44¢. About seven years ago, on March 15, 1957, and pursuant to statutory authority, the Director promulgated Regulation H-5 which prohibits any licensee from giving or lending "anything of value" to any customer in the sale or solicitation for sale of milk products, with the single exception that a licensee was permitted to lend any customer a doorstep milk box distinctly marked as the property of the lender.
On January 20, 1964, and continuing thereafter, Burlington and Cumberland, individually or in concert, began to distribute with the sale of milk in gallon containers a coupon purporting to have a face value of 18¢, and with the sale of *456 milk in half-gallon containers a coupon purporting to have a face value of 9¢. The 18¢ coupon reads as follows:

"18¢ COUPON
This coupon redeemable in cash to the holder when the New Jersey consumer milk price fix now in effect is adjudicated retrospectively unconstitutional so as to nullify the minimum milk price fixed for this date.
Coupons must be redeemed within 3 months of the date of adjudication with cash register receipt attached.

[*]Cumberland Farms

[*]Operated by Burlington Food Stores, Inc."
The coupon issued to purchasers of half-gallon containers is identical except that it bears a face value of 9¢ and is printed on paper of another color.
The Director learned of the coupon practice through newspaper stories and advertisements. He at once had his employees conduct an investigation and ascertained that the Burlington stores were issuing the coupons in question. He thereupon on January 24, 1964 wrote Cumberland and Burlington that the coupon practice constituted a violation of existing law and regulations, and more particularly L. 1941, c. 274 (the Milk Control Act, N.J.S.A. 4:12A-1 et seq.) and L. 1962, c. 182 (the Emergency Milk Control Law of 1962, N.J.S.A. 4:12A-59 et seq.), as amended, as well as Regulations H-5 and H-17 of the Office of Milk Industry. Further, the Director stated:
"* * * the circumstances under which you offer the coupons to the public would tend either to cause confusion or to deceive and mislead the public. Although you impose what would appear to be a restriction upon the basis of which the coupons are redeemable, the general import to the public is that they will receive the redemption in any circumstances in which it might be considered lawful. However, the coupons seemingly would not be redeemable, although the public might not understand this, should the Office of Milk Industry by its own action remove the restriction of minimum pricing or reduce the minimum price presently in effect to any degree whether or not it be to the fullest extent indicated by you in the coupon. There would appear to be other circumstances under which you would not redeem these coupons but which would not be understandable to the public." *457 Accordingly, the Director ordered Cumberland and Burlington immediately "to cease and desist from distributing these coupons or this office will be compelled to take necessary and appropriate action as may be permitted by law and under the aforementioned or any other applicable statutes."
The Director received no reply from either company. However, on January 30, 1964 counsel for the companies advised him by telephone that notwithstanding his order, Burlington and Cumberland would continue to issue the coupons. They did so.
N.J.S.A. 4:12A-30 (section 30 of the 1941 Milk Control Act) declares it to be unlawful and contrary to the public interest for any licensee or other person, association or corporation "to operate under any mutual or secret agreement, arrangement, combination, contract or common understanding," whereby the price of milk to be paid by stores or consumers is decreased. N.J.S.A. 4:12A-59 et seq. (the Emergency Milk Control Law of 1962, as amended) and Regulation H-17 prohibit the sale of milk by a store to consumers below the established minimum price. As already stated, Regulation H-5, adopted in 1957 pursuant to the 1941 Milk Control Act, as amended, prohibits a licensee from giving or lending anything of value to any customer served or solicited to be served by the licensee. And Regulation F-33, promulgated April 16, 1953 and still operative, embodies the language of N.J.S.A. 4:12A-30, just referred to, and in addition provides that both the buyer and the seller will be held equally responsible where, by agreement or any other arrangement, the price to be paid by stores or consumers for milk is decreased.
On January 31, 1964 Burlington and Cumberland, pursuant to N.J.S.A. 4:1-34, filed a notice of appeal (A-496-63) from the Director's order of January 24, 1964. And see R.R. 4:88-8. They also filed a petition for a declaratory judgment (A-518-63) on February 6, allegedly pursuant to R.R. 4:88-10, praying that this court adjudge the order illegal and void and that we order the Director to cease and desist immediately *458 from further publication or announcement of that order or from interfering in any way with the lawful and proper maintenance of petitioners' business.
Meanwhile, on February 3, 1964 the Attorney General, on behalf of the Director, filed a Chancery Division complaint (C-1498-63) in two counts, reciting the facts set out above. In the first count he alleged that the conduct of Cumberland and Burlington constituted an intentional violation of the law, and unless they were restrained, they could continue to violate the law. The second count was specifically based on the provisions of N.J.S.A. 4:12A-35(7) which prohibits a course of dealing of such nature as to satisfy the Director of an intent on the part of the licensee to deceive or defraud consumers. In that count the Director alleged that the coupons in question were not worth their purported face value of 18¢ and 9¢ respectively, because they represented a promise or agreement to pay money in the future under certain contingencies which might never occur, or which might not occur within the time limits fixed by the coupons. There might be other circumstances under which the coupons were not redeemable, and if such were the case, this would not be understandable to the public. The Director charged that defendants' use of the coupons amounted to a deceptive course of dealing, scheme and practice, intended to deceive or defraud consumers in matters regulated by the provisions of the Milk Control Act.
The Director therefore demanded judgment on either or both counts of the complaint, restraining Cumberland and Burlington from (1) giving or offering to give coupons of rebate or refund, or any other consideration or thing of value which results in or purports to result in the sale or offer of sale of milk below the lawful selling price; (2) engaging in any scheme, practice, or course of dealing, or using any device which results or purports to result in the sale of milk at prices below the lawfully established minimums; (3) engaging in any deceptive course of dealing or practice in connection with the sale of milk and, in particular, from the practice *459 of issuing the coupons in question; and (4) giving or offering to give coupons of rebate or refund, or any other consideration or thing of value.
On the same day the Director's complaint was filed, the Chancery Division judge entered an order to show cause, returnable February 14, why an injunctive order should not be issued enjoining Cumberland and Burlington according to the demands of the complaint. The matter was continued until February 21.
In the meantime, the companies filed a notice of motion in A-496-63 (the appeal) that they would on February 17 apply to this Part of the Appellate Division for an order staying the provisions of the Director's order of January 24 and restraining him from interfering in any manner with their distribution of the coupons or from taking any action to prohibit their operations until the appeal was determined. The notice of motion was supported by an affidavit of an associate of the companies' firm of attorneys.
The Attorney General, acting for the Director, then filed a notice of cross-motion that on February 17 he would apply for an order dismissing or staying the companies' appeal and petition for declaratory judgment or, in the alternative, for an order restraining the companies from the distribution and issuance of refund coupons contrary to and in violation of the Director's order, pending final determination of the appeal and the petition. The cross-motion was supported by an affidavit filed by the deputy attorney general charged with the responsibility of handling the matter for the Office of Milk Industry.
After the filing of briefs and oral argument had on the return day of the respective motions, we refused to dismiss or stay the appeal and petition for declaratory judgment, as requested by the Attorney General. We also denied the motion and cross-motion without prejudice. We further ordered that the Chancery Division action then pending (C-1498-63) be transferred to the Appellate Division and consolidated with *460 the companies' appeal and petition for declaratory judgment. An order so providing was entered February 21, 1964.
Pursuant to oral permission given, the parties were allowed to argue the order to show cause before the Chancery Division judge, who had meanwhile adjourned the matter to February 21. On that day he entered an order restraining Cumberland and Burlington, effective February 25, from issuing or distributing refund coupons in connection with the sale of milk, as more particularly set out in the complaint, pending final determination.
We have granted Cumberland and Burlington leave to appeal from the Chancery Division order of restraint. The parties have agreed that we proceed to dispose of that matter, as well as the appeal (A-496-63) and the petition for declaratory judgment (A-518-63) on the briefs and other papers already filed. However, it is understood that the only issue presented to us for determination at this time is whether the coupons constitute the giving or lending of anything of value, under Regulation H-5, to any customer served or solicited to be served by the licensees.

II.
We are, of course, not here concerned with the constitutionality of the Emergency Milk Control Law of 1962, N.J.S.A. 4:12A-59 et seq., as amended, nor the validity of Regulation H-17, promulgated December 11, 1963. These matters are now before the Supreme Court and are presently unresolved. We note, parenthetically, that the whole question of the validity of the 1962 act, as amended, and the regulations which the Director has promulgated pursuant to its terms, may become academic should the Supreme Court fail to render a decision on or before March 31, 1964, when the Emergency Milk Control Law expires. L. 1963, c. 165, amending L. 1962, c. 182.
Recognizing that the 1962 act will soon become inoperative, the Director has, after holding public hearings and considering the report of a five-member Advisory Committee of *461 Economists and a study of milk industry costs conducted by Case and Co., promulgated Order No. 64-1. This order, dated February 19, is to take effect at 12:01 A.M., March 31, 1964, and establishes a new range of minimum prices to be charged for the resale of milk. We are informed that counsel for Cumberland and Burlington has filed a notice of appeal from the new order. We are further informed that the appeal will challenge the constitutionality of the 1941 Milk Control Act.
Sufficient for our purposes is the presumption of validity which must still be given to the Emergency Milk Control Law of 1962 and the regulations thereunder, as well as the 1941 Milk Control Act pursuant to whose terms Regulations H-5 and F-33 were promulgated.

III.
At the time of the argument of the motion to dismiss the appeal of Cumberland and Burlington (A-496-63), the Attorney General argued that the Director's order of January 24, 1964 did not constitute a final decision or action of the Office of Milk Industry, a state administrative agency, and therefore an appeal would not lie under R.R. 4:88-8. We do not agree with this contention. The order in question was definite, peremptory and final: it ordered the licensed companies to cease and desist immediately from distributing coupons.
The petition for declaratory judgment (A-518-63) was allegedly brought pursuant to R.R. 4:88-10, which provides that "Review of the validity of any administrative rule promulgated by any state administrative agency shall be by petition for a declaratory judgment addressed to the Appellate Division." The Director's order does not constitute the promulgation of a rule by the Office of Milk Industry. A rule or regulation must be promulgated by formal procedures and filed with the Secretary of State in order to be valid and effective. N.J. Const. 1947, Art. V, Sec. IV, par. 6. R.R. 4:88-10 contemplates review of administrative rules and regulations *462 of general applicability and does not encompass an ad hoc order of the kind here involved. Cf. Bailey v. Council of the Division of Planning and Development, 22 N.J. 366, 373 (1956); Passaic v. Kingsley, 47 N.J. Super. 265, 268 (App. Div. 1957), certification denied 26 N.J. 170 (1958). Such an individual administrative determination, final in nature, comes within the purview of regular appeals to the Appellate Division under R.R. 4:88-8. And see N.J.S.A. 4:1-34.
The Chancery Division action for an injunction was properly brought by the Attorney General pursuant to N.J.S.A. 4:12A-44. That section of the 1941 Milk Control Act, as amended, provides that any habitual violation of the act, or of any of the orders, rules or regulations made pursuant thereto, "may be restrained by the Superior Court in an action brought for such purpose by the Attorney General on behalf of the director." Prior to the enactment of the statute in its present form in 1953, the section authorized the Director to file a bill in the Court of Chancery in the name of the State, on the relation of the Director, for an injunction to prohibit any habitual violation of the act or any of the orders or rules or regulations issued by the Director, or any other violation of any of the provisions of the act. L. 1941, c. 274, § 44.
Cumberland and Burlington suggest that the distribution of the coupons in question does not constitute an habitual violation of the provisions of the Milk Control Act of 1941 or the Emergency Milk Control Law of 1962, as amended, or of any of the operative rules and regulations of the Director promulgated pursuant thereto. We find to the contrary. Not only did the companies undertake a widespread distribution of the coupons on and after January 20, 1964, but they insist they have a right to continue with that practice. The Attorney General had no other choice but to bring a Chancery Division action on behalf of the Director to restrain such activity.
N.J.S.A. 4:12A-44 is a vital component in the statutory scheme of regulation. It provides the Office of Milk Control *463 and its Director, acting through the Attorney General, with an effective remedy against those who persist in violating the 1941 Milk Control Act or the Emergency Milk Control Law of 1962, as amended, or of any of the rules, regulations or orders adopted pursuant thereto. See State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504 (E. & A. 1935), and Hoffman v. Garden State Farms, Inc., 76 N.J. Super. 189 (Ch. Div. 1962).
The Chancery Division injunction proceedings are now before us by virtue of the companies' appeal from the restraining order of February 21, 1964. We may grant affirmative injunctive relief to restrain Cumberland and Burlington permanently from distributing their refund coupons in violation of the law and the Director's regulations. Not only is this so under the general language of N.J.S.A. 4:12A-44, as amended, but under our original jurisdiction, R.R. 1:5-4(a)  made applicable to this court by R.R. 2:5  and N.J. Const. 1947, Art. VI, Sec. V, par. 3. Cf. Milk Drivers, etc., Local 680 v. Cream-O-Land Dairy, 39 N.J. Super. 163, 174-5 (App. Div. 1956); Salitan v. Magnus, 62 N.J. Super. 323, 332 (App. Div. 1960).

IV.
We find that the distribution of the refund coupons in question by Cumberland and Burlington violates Regulation H-5 and N.J.S.A. 14:12A-30.
The Office of Milk Industry regulation which provides that in the sale and solicitation for sale of milk and milk products, no licensee "shall give or lend anything of value" to any customer served or solicited to be served by the licensee, has been in effect since at least September 1952. This provision was originally part of Regulation F-29, and was superseded by Regulation H-5, which became effective March 15, 1957. H-5 permitted licensees to lend a doorstep milk box to customers.
N.J.S.A. 4:12A-30, as already stated, provides that no licensee or other person, association or corporation shall, contrary to the public interest, operate under any agreement or *464 arrangement whereby the price to be paid for milk by consumers is decreased.
Regulation H-17, establishing minimum prices for the sale by stores to consumers of milk in gallon and half-gallon containers, is presently in full force and effect. The minimum prices so established are, as above noted, 87¢ for gallon containers and 44¢ for half-gallons.
Do the coupons which have been issued and distributed by Cumberland and Burlington constitute something of value? Counsel for the companies contends that the coupons have no value at the present moment. If, however, the contingencies upon which their redemption rests should occur, then the legislation which supports Regulation H-5 will have been declared to be null and void retroactively, so that no minimum price structure could be said to have validly existed during the time the Emergency Milk Control Law of 1962, as amended, was in effect. It is therefore argued that the present distribution of coupons is entirely legal.
We hold that the coupons do represent something of value, notwithstanding the fact that the obligation to redeem is conditional and contingent and will expire after a time. Comparable refund coupons issued by milk dealers were determined to be things of value, within the meaning and intendment of Regulation H-5, in Hoffman v. Garden State Farms, Inc., above, 76 N.J. Super. 193 (Ch. Div. 1962). In that case Garden State issued certificates to each purchaser of a gallon container of milk, labeled "Milk Freedom Certificate." The face of the certificate read:
"On the day on which retail milk controls established by the Office of Milk Industry are abolished in New Jersey, or declared void by the courts, Garden State Farms, Incorporated, will authorize payment to the bearer hereof the sum of fifteen cents upon surrender of this certificate. This certificate may be redeemed upon the conditions set forth and listed on the reverse side hereof."
The reverse side of the certificate stated that the bearer could redeem it for 15¢, but this had to be done at the location specified by Garden State when the certificate matured, and *465 the certificate had to be endorsed by the bearer upon presentation and surrender. The certificate was to be void one year following the date upon which it matured, or on January 1, 1964. A similar certificate was issued for half-gallon containers, redeemable for 8¢. Garden State advertised its certificates in the local newspapers and by window notices, stating that the certificates would be redeemable "when milk controls are abolished."
Farm Stores, Inc., another of the defendants in that case, operated licensed retail stores and issued bottle tops for milk of Lampert Dairy Farm, Inc., a licensed milk dealer. The half-gallon bottles had a bottle top reading, "SAVE  LAMPERT DAIRY FARM, INC.  *  HALF GALLON." There were similar bottle tops for gallon bottles. The leaflets distributed to purchasers read, in part:

"LAMPERT DAIRY FARM INC. CONSUMER TREASURE CAPS
SAVE YOUR LAMPERT DAIRY FARM INC. CAPS WITH THE STAR EMBLEM. THEY ARE WORTH 15 CENTS ON THE PURCHASE OF A GALLON GLASS JUG AND 7 CENTS ON THE HALF GALLON GLASS JUG.

* * * * * * * *
LAMPERT WILL CHEERFULLY PAY YOU 15 CENTS FOR EACH RED-STAR CAP AND 7 CENTS FOR EACH BLACKSTAR CAP as soon as such payments are approved by the New Jersey Milk Director and the State courts. If no approval is forthcoming, Lampert will gladly turn the money over to your favorite charity."
Two other defendants issued "jug milk certificates" reading:
 "MEADE DAIRY FARMS INC. Operators of
 FARM FAIR
 JUG MILK CERTIFICATE
This certificate may be redeemed at the store where issued on or after the day on which retail milk price control is ended in New Jersey  subject to conditions on reverse side.
 Meade Dairy Farms, Inc.
 Operators of FARM FAIR
 President Les Woodruff Jr."
*466 The certificates purported to have a value of 8¢ for each half-gallon container. Two certificates were issued with each sale of milk in a gallon container. The certificates were to be void after December 31, 1963.
As here, the defendants in the Garden State Farms case conceded that they sold milk from their stores at the prices established by the Office of Milk Industry regulations per gallon and half-gallon, and that with every sale they offered certificates or bottle tops evidencing their promise to refund a certain sum per full gallon or half-gallon, payable on the date when retail milk price controls ended. Chancery Division Judge Mintz held that the refund certificates and bottle tops constituted things of value, notwithstanding the contingency which might defeat or postpone redemption. He said:
"A conditional promise to pay `when able' constitutes a sufficient consideration to support a contractual obligation. City of Camden v. South Jersey Port Commission, 4 N.J. 357 (1950), affirming and modifying 2 N.J. Super. 278 (Ch. Div. 1949). See also Lutz v. Ryno, 1 N.J. 363 (1949).
`[T]he possibility that the condition may happen involves a chance of detriment which is sufficient to make the promise valid consideration.' 1 Williston, (3d ed. 1940), § 103, p. 395.
True, the contingency  namely, the ending of milk price controls  may never occur, but the fact remains that defendants' customers are purchasing milk on better terms than they can get from other stores which adhere to minimum prices and offer no agreement or expectation of a cash refund. * * *." (76 N.J. Super., at pages 197-198)
The court referred to Cooley v. White Cross Health & Beauty Aid Discount Centers, Inc., 229 Md. 343, 183 A.2d 381 (Ct. App. 1962), wherein a similar device to evade the Maryland Fair Trade Law was held invalid. It also cited Milk Control Comm'n v. Rieck Dairy Division, etc., 193 Pa. Super. 32, 163 A.2d 891, 894 (Super. Ct. 1960), where the court construed a section of Pennsylvania's Milk Control Law which banned price evasion schemes by enumerating illustrative practices to be prohibited. The court there said:
*467 "The methods and devices whereby milk can be sold at a price less than the minimum fixed by the commission are as unlimited as the genius of man * * *. Milk control is founded upon price control. As soon as dealers find a method or device to break down the commission's control over the price actually being paid, milk control will become chaotic, and soon non-existent. The legislature understood this. It is evident from reading Section 807 of the Milk Control Law * * * that it attempted, by every conceivable means, to close every `loop hole' which would enable one dealer to obtain a price advantage over another."
Cumberland and Burlington would distinguish the Garden State Farms case on the ground that the certificates there involved could conceivably be redeemed although the underlying law was not held invalid  i.e., the Director might voluntarily remove the controls. We do not read the decision as turning upon that factor. The Chancery Division judge was concerned lest the spirit and the letter of the law be circumvented by the ingenuity of man.
The court in Garden State Farms observed that the certificates were admittedly issued to induce sales and that purchasers were encouraged to save them. Significantly, the affidavit filed by the general manager of Burlington contains the following statement:
"5. As a result of offering these coupons to the public under the conditions so stated, we have immeasurably increased our customer patronage and business.
6. Our sales volume in milk distribution through our store outlets has increased to the point where we now find it economically feasible to open more retail stores in the state of New Jersey."
Obviously, as one might reasonably have surmised, patrons to whom the coupons are issued believe that they are receiving something of value. And Cumberland and Burlington must impliedly attribute some value to their coupons, otherwise they would be indulging in a deceptive practice in distributing them  a suggestion they violently reject. These licensees are deriving the same competitive advantage as would ordinarily result from a cut in prices. If their coupons are given the stamp of approval, one can reasonably anticipate a flood of *468 similar devices, all gauged to undermine the minimum retail price structure now in effect. See Milk Control Comm'n v. Rieck Dairy Division, etc., quoted above.
The constitutionality of milk price control legislation has, as we have observed, yet to be determined by our highest court. Until that time, the coupons are in the nature of a money expectancy and, as such, they constitute something of value within the meaning of Regulation H-5.
It is entirely clear that an arrangement and common understanding exists between Cumberland and Burlington involving the issuance and distribution of the refund coupons. This being so, they are also in violation of N.J.S.A. 4:12A-30.
One final matter requires consideration. The companies urge they are entitled to a hearing "where it can be shown why our actions are bad and others are good." There is no mystery about the matter; no information has remained undisclosed to the companies with respect to their practices in issuing refund coupons and the particular respects in which these coupons violate the law and the Director's regulations. They have also been told the basis upon which the Director issued his January 24, 1964 order. Further, the Chancery Division action for injunctive relief is completely informative. Nothing has been suggested to us as to what further evidence or information could be adduced at a hearing which would affect ultimate disposition of the question as to whether the coupons are a thing of value.

V.
Our conclusion that the refund coupons constitute a violation of Regulation H-5 and N.J.S.A. 4:12A-30 makes unnecessary any hearing, such as Cumberland and Burlington have requested, for the purpose of determining whether the coupons represent a deceptive course of dealing, scheme and practice, as asserted by the Director in his order and by the Attorney General before the Chancery Division and in this court.
*469 The order of the Director is therefore affirmed. The petition for declaratory judgment is dismissed. The Chancery Division order under appeal is affirmed. The issuance and distribution of the coupons will be permanently restrained, effective immediately.